[No. B010038. Second Dist., Div. Three. July 29, 1986.]

THE STATE OF CALIFORNIA ex rel. PUBLIC WORKS BOARD, Plaintiff and Appellant, v.
PATRICIA BRAGG, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard D. Martland and Marvin Goldsmith, Assistant Attorneys General, Robert H. Francis, Norman B. Peek and Marsha S. Miller, Deputy Attorneys General, for Plaintiff and Appellant.

Alfred Fadel for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant State of California, acting by and through the state Public Works Board (Board), appeals from a judgment awarded defendant and respondent Patricia Bragg (Bragg) in an eminent domain action.

For reasons hereinafter expressed, the judgment is reversed.

### PROCEDURAL AND FACTUAL BACKGROUND

On April 22, 1982, the Board filed an eminent domain action to condemn parcels of land in the Santa Monica Mountains. As owner of one of the parcels, Bragg filed an answer. The only issue set for trial was the fair market value of the parcel.

A local rule of the Los Angeles Superior Court pertaining to eminent domain,[1] "Exhibit A Requirements for Valuation Data" (Exhibit A), governs the preparation, filing and exchange of appraisal reports and their use at trial.

The deputy attorney general, who was handling his first condemnation case, did not timely file a complete appraisal report. The appraisal reports were nonetheless ordered exchanged.

On February 15, 1984, Bragg's counsel informed the deputy attorney general the Board's appraisal report was incomplete. On February 16, 1984, the deputy attorney general messengered to Bragg's counsel an allegedly complete appraisal report.

At the February 17, 1984, settlement conference, the deputy attorney general personally served a copy of the report on Bragg's counsel, and offered to continue the trial date. Bragg's counsel made an oral motion to exclude both the Board's completed appraisal report and its appraiser's

---

[1] The Los Angeles Superior Court Eminent Domain Policy Memorandum provides: "EX-HIBIT A [¶] REQUIREMENTS FOR VALUATION DATA [¶] The parties are ordered to submit appraisal reports upon which they intend to rely at the time of trial, if any, with the clerk in Department 43, on or before five days before the final pretrial. If any party intends to have an owner or any witness, other than the appraisers whose appraisal reports are to be submitted, testify in this case with respect to valuation, such party shall also file with the court, on the same date, the name of such person, his opinion as to valuation, and all factual data, not otherwise submitted, upon which such opinion is based, including market data, reproduction studies, and capitalization studies, in as much detail as practicable. If the court determines said reports to be comparable, and if it appears just and proper to do so, an exchange will be ordered. If the court does not order an exchange, the court will initial the documents for identification at the time of trial. Except as set forth herein, and except for the purpose of rebuttal, the parties will not be permitted to call any witness to testify on direct examination to an opinion of value, a sale, a reproduction study or capitalization study, unless submitted to the court as set forth above. . . . [¶] In the event a party subsequently discovers any information which should have been submitted as set forth in the preceding paragraph, and desires in good faith to use the information at the time of trial, he must immediately notify the other party to this effect, and provide the other party with the said information, and show good cause to the court, either in Department 43 or the trial department, that he should be permitted to use such information at the trial." (Italics in original omitted.)

testimony at the trial. The judicial officer in Department 43 reserved a ruling to the time of trial.[2]

On the March 28, 1984, scheduled trial date, Bragg made a motion *in limine* to exclude the report on the grounds that the Board did not comply with the pretrial order and Exhibit A and that the Board's proposed evidence would be highly prejudicial. Bragg's motion sought exclusion of: the appraisal of the subject property; testimony of the Board's expert as to the value of the subject parcel based on information in the report; evidence of a comparable sale designated in a February 23, 1984, letter from the Board to Bragg; and the testimony of two other proposed experts. The Board's report valued Bragg's property at $70,000, and indicated its highest and best use as a mountain retreat.

On March 29, the trial court granted Bragg's motion as to all items. After this ruling, the Board, through the deputy attorney general, did not in any way participate in the trial.

Bragg testified in her opinion, the fair market value of her property was between $175,000 and $180,000. Her expert appraiser opined that the fair market value of the property was $122,500 and that its highest and best use was as a single family residence, and Bragg's expert's appraisal report was admitted into evidence.

The jury found the fair market value of Bragg's property to be $145,000. She was also awarded litigation costs of $10,426, which included appraisal and attorney's fees.

The Board filed a motion for a new trial which was denied, and this appeal followed.

## CONTENTIONS

The Board contends the trial court abused its discretion in granting Bragg's motion *in limine* because there was no showing of prejudice due to the late filing of its complete appraisal report, and because the law favors a trial on the merits. It also contends the penalty thus imposed "adversely affect[ed]" the Board's cause of action in contravention of Code of Civil Procedure section 575.2, subdivision (b).[3]

---

[2]*Department 43 of the Los Angeles Superior Court* previously handled all pretrial matters in eminent domain actions. However, in January 1986 these actions were moved to Department 60.

[3]All subsequent code section references are to the Code of Civil Procedure, unless otherwise indicated.

SUMMARY

Although section 575.2 was enacted in 1982, it has never been interpreted and/or applied. In this case of first impression, we hold that section 575.2, subdivision (b), is applicable, and when counsel did not invoke it to protect his client, the trial court should have done so on its own motion.

Any sanctions imposed should have been limited to counsel because counsel, not the client, was responsible for filing the incomplete appraisal report in violation of the local rules.

The sanctions imposed "adversely affect[ed]" the client contrary to section 575.2, subdivision (b); therefore, the case is reversed and remanded.

DISCUSSION

1. *Section 575.2 should be given due consideration.*[4]

The circumstances of this case contain all of the elements set out in section 575.2 and its application would be consistent with legislative intent.

a. *This issue can be raised on appeal.*

The Board is contending on appeal that section 575.2, subdivision (b), circumscribes the only penalty available for its counsel's failure to comply with Exhibit A. The Board urges that the trial court's grant of Bragg's motion *in limine* in its entirety as a sanction, adversely affected the Board's cause of action and constituted prejudicial error.

An appellate court ordinarily will not consider procedural defects or erroneous rulings in connection with either relief sought or a defense asserted when an objection could have been but was not made to the lower court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.) But here, only a question of law is presented on the facts appearing

---

[4]Section 575.2 reads: "(a) Local rules promulgated pursuant to Section 575.1 may provide that if any counsel, a party represented by counsel, or a party if in pro se, fails to comply with any of the requirements thereof, the court on motion of a party or on its own motion may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature as otherwise provided by law, and may order that party or his or her counsel to pay to the moving party the reasonable expenses in making the motion, including reasonable attorney fees. [¶] (b) It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

in the record. (*Barton* v. *Owen* (1977) 71 Cal.App.3d 484, 491 [139 Cal.Rptr. 494].) The Board is not arguing a new theory of the case, and it is basic hornbook law that the function of an appellate court is to review errors of law. (9 Witkin, *supra,* § 241, p. 246; *Ernst* v. *Searle* (1933) 218 Cal. 233, 240 [22 P.2d 715]; 9 Witkin, *supra,* § 316, p. 327.) The interpretation and applicability of a statute is a question of law (*Id.,* § 242, p. 247).[5]

b. *Analysis of sections 575.1 and 575.2.*

Sections 575.1 and 575.2 were added in 1982 and are located within Title 7A, Pretrial Conferences, in the Code of Civil Procedure. Section 575.1 allows each superior court in the state to promulgate *local rules* "to expedite and facilitate the business of the court[,]" and "provide for the supervision and judicial management of actions from the date they are filed."[6]

Section 575.2 discusses the effects of noncompliance, and subdivision (a) thereof provides for sanctions of striking all or any part of any pleading filed by the delinquent counsel or party, dismissal of a part or all of the action or proceeding, or entry of a judgment by default, or the imposition of any lesser penalty, including the moving party's attorney's fees.

However, subdivision (b) of section 575.2 circumscribes subdivision (a) by proclaiming that when *counsel* and not the party is responsible for the failure to comply with the local rules, any penalty "*shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto.*" (Italics added.)

(1) *Statutory construction necessary.*

■ When there is no ambiguity, uncertainty or doubt about the meaning of a statute and its words unequivocally express a certain definite thought,

---

[5]Federal courts have applied appropriate statutes on appeal even when not called to the attention of the trial court. (*Huntress* v. *Huntress' Estate* (7th Cir. 1956) 235 F.2d 205, 209 [61 A.L.R.2d 682]; *Smith Engineering Co.* v. *Rice* (9th Cir. 1938) 102 F.2d 492, 499.)

[6]Section 575.1 states: "The presiding judge of each superior court may prepare with the assistance of appropriate committees of the court, proposed local rules designed to expedite and facilitate the business of the court. The rules need not be limited to those actions on the civil active list, but may provide for the supervision and judicial management of actions from the date they are filed. Rules prepared pursuant to this section shall be submitted for consideration to the judges of the court and, upon approval by a majority of the judges, the judges shall have the proposed rules published and submitted to the local bar for consideration and recommendations. After a majority of the judges have officially adopted the rules, 61 copies shall be filed with the Judicial Council as required by Section 68071 of the Government Code and the local rules shall also be published for general distribution. Rules adopted pursuant to this section shall not be inconsistent with law or with the rules adopted and prescribed by the Judicial Council."

there is no need to apply rules of statutory construction. (*Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 207 [114 P.2d 592]; 58 Cal.Jur.3d, Statutes, § 84, p. 434.)

■ While section 575.2, subdivisions (a) and (b), when read separately appear clear on their face, when read together, the two subdivisions are incongruent and conflicting. Subdivision (a) allows for a broad spectrum of penalties, but subdivision (b) sharply limits penalties in instances of *attorney* negligence.

■ "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] ■ Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute *or from its legislative history.*' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856], italics added.)

To harmonize the apparent discord in subdivisions (a) and (b), we examine the legislative history of section 575.2.

(2) *Legislature history of sections 575.1 and 575.2.*[7]

Section 575 was adopted in 1955 and permits the *Judicial Council* to promulgate rules governing pretrial conferences in civil cases in the superior, municipal and justice courts. Also, since 1953, under Government Code section 68070, every court has been able to make rules for its own internal government, as long as the rules are not inconsistent with law or with those promulgated by the Judicial Council.

However, the *superior courts* lacked authority to enact rules governing pretrials. Assembly Bill No. 3784, which was enacted in 1982 as sections 575.1 and 575.2, gave superior courts authority to draft rules aimed at

---

[7]Additional briefing on the history, purpose and applicability of these statutes was requested, and the Board filed a supplemental brief containing such information.

Under Evidence Code section 452, subdivision (c), judicial notice may be taken of the official acts of the Legislature. Under Evidence Code section 459, subdivision (a), the reviewing court may take notice of any matter specified in Evidence Code section 452.

expediting and facilitating the business of the court and to provide penalties for noncompliance.[8]

(3) *Intent clear that counsel's failure to comply with local rules was not to be imputed to the client.*

Assembly Bill No. 3784 was amended in the Senate Committee on Judiciary in response to the question whether "parties [should] suffer for the negligence of their lawyers." The recommendation that "[t]he bill should be amended to provide that sanctions could only be imposed against a party for the party's disobedience and not the disobedience of the party's attorney" was adopted.

Section 575.2, subdivision (b), is thus an exception to the general rule that the negligence of an attorney is imputed to the client (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 236 [211 Cal.Rptr. 416, 695 P.2d 713]; *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895 [187 Cal.Rptr. 592, 654 P.2d 775]; *Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61]), with the client's only recourse a malpractice action against the negligent attorney. (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 898; *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 809 [137 Cal.Rptr. 434]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240].)

Another limited exception already exists where the client is relatively free from fault and the attorney's neglect amounts to positive misconduct. The courts have held the attorney's authority to bind the client does not permit counsel to impair or destroy the client's cause of action or defense. (*Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 898; *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353.)

Section 575.1 admonishes that the local "rules . . . shall not be inconsistent with law." However, as there is present authority for the above exception to the general rule (*Buckert* v. *Briggs, supra,* 15 Cal.App.3d at p. 301; *Orange Empire Nat. Bank* v. *Kirk, supra,* at p. 353), we find that the Legislature intended section 575.2 to become another exception.

---

[8]While sections 575.1 and 575.2 are found in the pretrial conference title of the Code of Civil Procedure, neither their stated purpose nor language limits their use only to pretrial conferences. The Senate Committee on Judiciary stated the bill would authorize courts to issue orders concerning "pretrial case management," but the language of the statute indicates a broader purpose than mere pretrial conferences as it reads, "expedite and facilitate the business of the court" and "provide for the supervision and judicial management of actions from the date they are filed." (§ 575.1.)

(i) *The proliferation and complexity of the local rules justifies the exception.*

Of the 58 counties in California, 35 have promulgated local superior court rules.[9] These sets of rules are lengthy and detailed. Los Angeles Superior Court, as the largest superior court, has approximately 470 pages of local rules. Alameda, Marin, Orange, San Diego, San Francisco, and Santa Clara Counties' rules are all well over 100 pages in length. Approximately 9 of the 35 counties have divided their local rules into subject categories. San Bernardino has 22 such categories, Ventura has 20, while Los Angeles has 9. Moreover, these categories are *not limited to procedural pretrial matters,* but often cover various *substantive* areas of law.

In Los Angeles County, the categories include superior court rules, arbitrators' handbook, civil trials manual, probate policy, law department's policy manual, class actions, adoptions, *eminent domain* and family law.

2. *Application here.*

Exhibit A is a local rule and its provisions are controlling. Admittedly, the deputy attorney general failed to timely file a complete appraisal report. Nor did he timely provide a list of experts.

The deputy attorney general did not avail himself of the safety valve provided in Exhibit A for situations where "a party subsequently discovers any information which should have been submitted . . ., and desires in good faith to use the information at time of trial, . . . ." That portion of the local rule requires such party to "immediately notify the other party to this effect, and provide the other party with the said information, and *show good cause* to the court, either in Department 43 or the trial department, that he should be permitted to use such information at the trial." (Italics added.)

The deputy attorney general did provide Bragg's counsel with what purported to be a complete report at the settlement conference. Bragg's counsel made an oral motion to exclude the complete report; the trial court reserved a ruling to the time of trial. The deputy attorney general did not notice a motion to show good cause. However, during the arguments on the motions *in limine* before the trial court, he attempted orally to convince the trial court that by these corrective measures, he had shown good cause for the use of the evidence at trial.

---

[9]Under Evidence Code section 452, subdivision (e), judicial notice may be taken of any rules of court of this state. Under Evidence Code section 459, subdivision (a), a reviewing court may take judicial notice of any matter specified in Evidence Code section 452.

Section 1010 directs that notices of motions "must be in writing, and the notice of a motion, . . ., must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice."

A showing of good cause can be argued orally following a properly noticed motion. However, the desire "in good faith to use the information at the time of trial" as a factual representation should be set forth in a duly sworn affidavit or declaration. The deputy attorney general did not meet his burden in this regard.

On the issue of responsibility for failure to comply, the deputy attorney general did not attempt to place any blame on his client, and the record substantiates only his culpability in all particulars. Therefore, any penalty should have been imposed on him and should not have been allowed to affect the Board's cause of action.

That the Board was adversely affected is certain, at least to the extent that the trial court disallowed any of the Board's evidence of valuation to come before the jury as a sanction for the deputy attorney general's mistakes. As indicated, the Board's report appraised Bragg's property at only $70,000, with a highest and best use as a mountain retreat; Bragg personally testified the fair market value was between $175,000 and $180,000; her expert opined the value at $122,500 with the highest and best use as a single family residence; the jury awarded $145,000 to Bragg and costs of $10,426.

For all these reasons, section 575.2, subdivision (b), does apply to this case.

a. *Trial courts must ensure fair enforcement of local rules.*

Through section 575.1, the Legislature has enabled each of the 58 superior courts in the state to act as mini-legislatures in the preparation of local rules governing a wide variety of practice in their courts. It also reserved to the courts the power to enforce local rules by providing penalties for failure to comply. (§ 575.2.) However, as noted, express legislative intent set forth in section 575.2, subdivision (b), mandates that "any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

Unfortunately, the section is silent as to its implementation. After due consideration, we conclude the only possible way of ensuring the section

is carried out is to require the court *on its own motion* to effect section 575.2, subdivision (b), *if the negligent counsel does not so move.*

Section 575.2, *subdivision (a),* allows the court on motion of a party or *on its own motion* to strike all or part of a pleading, to dismiss the action or proceeding or part thereof, to enter a default judgment, or to impose lesser penalties, on the offending party or counsel, including awarding attorney's fees. Similarly, section 128.5 also allows a trial court *on its own motion* to award expenses as a sanction, after notice and opportunity to be heard.

We conclude section 575.2, subdivision (b), requires more than mere permissive court action; it *compels* court action to guarantee protection of an innocent party.

b. *Trial court should have conducted a hearing and decided on the proper sanctions.*

In order to determine what penalties are appropriate, the trial court should hold a hearing to fix responsibility for failure to comply with Exhibit A.

Here, upon a finding the Board bore no responsibility for the lack of compliance, the trial court could have imposed an appropriate penalty on the deputy attorney general, and if necessary, it had the inherent power to continue the trial to allow Bragg time to prepare. (*Martin* v. *Noble* (1966) 244 Cal.App.2d 366, 368 [53 Cal.Rptr. 106].) In this manner, the Board could have had its day in court.

By these observations, we do not mean to foreclose other remedial actions by the trial court. However, we believe section 575.2, subdivision (b), implicitly calls for a fact-finding hearing to ascertain culpability, following which the trial court should determine the appropriate action to be taken.

3. *Trial court may have abused its discretion on the in limine ruling.*

The question remains as to whether the trial court abused its discretion in granting Bragg's motion *in limine* in its entirety. The practical effect of this ruling was to prevent the introduction of *any* valuation evidence by the Board in an eminent domain trial where the only issue was the fair market value of Bragg's property. The Board was thus denied a trial on the merits.[10]

---

[10]By this observation, we do not mean to countenance the deputy attorney general's refusal to participate in the trial in any way, including the cross-examination of witness.

*Redevelopment Agency* v. *First Christian Church* (1983) 140 Cal.App.3d 690 [189 Cal.Rptr. 749], is also a condemnation case. There, in considering whether to exclude certain valuation data, the trial court stated: "These provisions of the policy memorandum, [Requirements for Valuation Data], promulgated pursuant to Code of Civil Procedure section 1258.300[11] and approved by us in *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 200-201 . . ., give the trial court wide discretion in determining whether or not good cause has been shown for the delay in presenting valuation data to an opposing party. . . . Such a determination naturally hinges upon a finding by the court that the opposing party has or *will suffer prejudice* if the evidence is admitted at trial." (*Id.*, at p. 700, second italics added.)

The showing of prejudice here was questionable. Bragg had the almost-complete report some 40 days before trial, the name of another expert witness about a week later, and the deputy attorney general had twice offered to continue the trial. The name of the last witness proferred by the deputy attorney general just before trial certainly could have been excluded without constituting an abuse of discretion.

In *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 957-958 [210 Cal.Rptr. 464], the defendant attorney in a legal malpractice case did not comply with a discovery order to compel production of documents under section 2034. The trial court granted plaintiff's motion to strike the answer and entered a default judgment for general and punitive damages. Although finding the "obstinate failure to cooperate in the discovery process" was calculated, the *Wilson* court found the imposition of the harsh sanction of precluding the defendant from further participation in the case was inappropriate. (*Id.*, at p. 958.)

Some lesser sanction than the one imposed by the trial court here would have been more appropriate. However, in view of our holding that section 575.2, subdivision (b), is controlling, we need not pursue this issue further.

CONCLUSION

By its literal language, section 575.2, subdivision (b), applies where counsel has not complied with local court rules. Failure by either counsel, or the trial court, to invoke its provisions resulted in the imposition of sanctions which adversely affected the client's cause of action, contrary to legislative intent.

---

[11]Code of Civil Procedure section 1258.300 allows the superior court of any county to establish a procedure in lieu of those provided in the code for the exchange of valuation data in an eminent domain action.

## Disposition

The judgment is reversed and the case is remanded for proceedings not inconsistent with the views expressed herein. Each party to bear respective costs on appeal.

Lui, J., and Arabian, J., concurred.

A petition for a rehearing was denied August 28, 1986, and the opinion was modified to read as printed above.