[No. A032801. First Dist., Div. Three. Nov. 24, 1987.]

In re the Marriage of DOROTHY L. and JOHN E. COLOMBO.
DOROTHY L. COLOMBO, Appellant, v.
JOHN E. COLOMBO, Respondent.

COUNSEL

Jay-Allen Eisen and Sheldon D. Hodge for Appellant.

Jerry B. Abbott and Abbott, Johnston, Borin & Bryan for Respondent.

OPINION

MERRILL, J.—Dorothy Colombo appeals from a judgment of dissolution of marriage, contending that several prejudicial errors were committed during the course of the proceedings before, during and after trial. We agree with the appellant and therefore reverse the judgment.

I

Appellant (Wife) and respondent John E. Colombo (Husband) were married on November 12, 1966. At that time, Husband owned the residence at 980 Lillian Way, Sebastopol, free and clear of any encumbrances. Husband had acquired this property as part of the settlement of his previous marriage. The parties moved into this house at the time of their marriage and remained there up until the time of their separation approximately 14 years later.

On June 2, 1980, in connection with the preparation of their wills, Husband executed a grant deed conveying title to the residence to Husband and Wife as joint tenants. Soon after the execution of the grant deed, Wife moved out of the house and the parties separated. On June 18, 1980, Wife filed a petition for dissolution of marriage. In her property declaration filed with the petition, Wife asserted that all of the marital assets were community property, including stocks and bonds worth over $300,000 and the residence on Lillian Way. In his first responsive declaration filed on July 22, 1980, Husband asserted that he had stocks, bonds and other liquid assets under his control worth approximately $271,045, while Wife had only

approximately $50,000 worth of such assets under her control. In a later responsive property declaration filed on November 20, 1981, Husband claimed as his separate property the Lillian Way residence and another parcel of real estate, as well as stock in various companies and a life insurance policy. In this property declaration, Husband stated that he did not know the fair market value of any of his separate assets.

On December 11, 1981, the parties entered into a stipulation whereby they agreed to divide equally certain stocks, mutual funds and real estate investment trusts, each of which was to be charged against the community property account of the recipient. Approximately one week after entering into this stipulation, the parties went to a stockbroker's office and made arrangements for the transfer of shares from Husband to Wife pursuant to the stipulation. Wife subsequently sold some of this stock and used the proceeds to make gifts to her children and for the purchase of an automobile for herself.

Shortly after entering into the stipulation, the parties reconciled and Wife moved back into the Lillian Way residence. Wife testified that in doing so, they intended to form a more "complete partnership," in which they would pool their assets and resources, and Husband would train Wife in how to study the stock market and how to buy and sell stock. Husband testified that although he had some reservations about the likelihood of success of the reconciliation, he wanted to make it work. Husband began depositing his paycheck and stock dividend checks in the parties' new joint checking account, regardless of whose name the stock was in.

The attempt at reconciliation failed, and the parties again separated in October 1982. At this point, Wife renewed the dissolution action and had Husband barred from living at the Lillian Way residence. In his responsive declaration to Wife's order to show cause on the residence exclusion, Husband alleged that the residence was his separate property, that Wife had "falsely and fraudulently" obtained his signature on the deed conveying the property in joint tenancy to the two parties, that she had "secreted substantial community funds during the period of [the parties'] 'reconciliation,'" and that she had refused to disclose "the nature or amount of such assets that she now holds for the purpose of defrauding [Husband] and the Court in order to obtain spousal support." Husband also filed a complaint for fraud against Wife, alleging that she had fraudulently obtained his signature on the joint tenancy deed shortly before filing the original petition for dissolution. This complaint was subsequently consolidated with the dissolution action pursuant to stipulation of the parties.

On June 22, 1984, Husband filed a document entitled "Pre-trial Statement/Request for Admissions"; five days later, he filed his at-issue

memorandum. Although denominated a request for admissions, Husband's pretrial statement consisted of a lengthy account of his property claims in narrative format rather than a list of affirmative statements to be admitted or denied. Included in this narrative statement were Husband's claims that the Lillian Way residence and virtually all of the shares of stock in his possession were his separate property.

On June 28, 1984, Wife filed a document entitled "Responsive Pretrial Statement and Request for Admissions." This expressly "skeletal" response to Husband's request for admissions stated that Wife would be unable to fully respond to Husband's request until Wife's attorney had received Husband's responses to interrogatories previously served on Husband. However, Wife's statement did respond to a few of Husband's claims; among other things, she claimed a community property interest in the Lillian Way residence, a community contribution to the refurbishing and remodeling of the residence, and improper conversion to Husband's separate property of various community assets. Husband's interrogatory responses, which were due by July 5, 1984, were filed· on June 28, 1984.

In August 1984, the attorney who had prepared Wife's responsive pretrial statement moved for permission to withdraw as her counsel. The motion was granted, and an order permitting his withdrawal was filed on September 14, 1984. In the meantime, on September 6, 1984, at a settlement conference, Wife appeared without counsel and was reminded by the settlement conference judge that no effective response to Husband's pretrial statement and request for admissions had been filed by her or her attorney. A new attorney appeared on Wife's behalf shortly thereafter.

On January 30, 1985, Husband served Wife with a "Notice that Truth of Matters Stated in Pretrial Statement/Request for Admissions has been Deemed Admitted." On February 1, 1985, an amended pretrial statement was filed by Wife's new attorney pursuant to an ex parte order permitting her to do so. In this amended pretrial statement, Wife disputed Husband's claims that Wife had defrauded him of his separate property interest in the Lillian Way residence, and claimed virtually all the disputed stocks as community property.

However, on February 5, 1985, in response to Husband's motion claiming surprise and on the grounds of Wife's failure to give notice of her ex parte application for permission to file her amended pretrial statement, the trial court revoked its earlier order permitting Wife to amend the pretrial statement. Wife then moved pursuant to Code of Civil Procedure section 473 for relief from the late filing of the amended pretrial statement, on the grounds of the alleged inadvertence and excusable neglect of members of

the office staff of Wife's attorney. On February 21, 1985, the trial court denied this motion.

Trial took place in April 1985 and lasted two days. Counsel for Wife again raised the issue of amending the pretrial statement in order to assert Wife's position with regard to community ownership of the shares of stock claimed by Husband as his separate property. Husband's attorney took the position that Wife was barred from challenging Husband's claim to the stock and that the only issues before the trial court were those to which Wife had responded in her original responsive pretrial statement filed on June 28, 1984: the extent to which community funds were used to improve the Lillian Way residence, the amount of spousal support to be paid, and attorney fees. The trial court ruled that Wife's "skeletal" pretrial statement was not in compliance with local court rules because it did not contain any response to the bulk of the allegations in Husband's pretrial statement and request for admissions; that there was no cognizable amendment to this responsive pretrial statement; and that any objections and disputes regarding matters raised in Husband's pretrial statement had been waived. Thus, Wife could not offer any evidence on these issues. In effect the trial court ruled that Wife had admitted the bulk of the statements regarding the couple's property as contained in Husband's pretrial narrative statement.

On June 12, 1985, the trial judge filed a statement of intended decision. The court found that there was insufficient evidence to support a judgment of fraud against Wife with regard to the signing of the deed putting the Lillian Way residence in joint tenancy; that although the Lillian Way property was the parties' community property, Husband was entitled to reimbursement pursuant to Civil Code section 4800.2 for the value of the home at the time of the June 1980 transfer into joint tenancy; that the value of the home at the time of trial was the same as when it was transferred into joint tenancy; and that the December 11, 1981, stipulation of the parties whereby they agreed to divide equally certain stocks, mutual funds and real estate investment trusts was not abrogated by any attempted reconciliation. This statement of intended decision ordered Husband's attorney to prepare a judgment "consistent with the findings contained herein, along with a proposed division of community property, [and] serve and submit the same to the Court for review."

The Husband's attorney prepared a proposed judgment containing detailed dispositions of all of the couple's property, including 26 issues of stock which were not identified in the statement of intended decision. On July 24, 1985, this proposed judgment was signed, filed and entered by the acting presiding judge rather than the trial judge. This appeal followed.

## II

On appeal, Wife first contends that the trial court erred in ruling that, under local rules, she was precluded from offering evidence with respect to those matters which she now disputes in Husband's pretrial statement/request for admissions. We agree.

Under section 575.1 of the Code of Civil Procedure, superior courts have the power to adopt local rules "designed to expedite and facilitate the business of the court," so long as such local rules are not inconsistent with state statutes or the Rules of Court. Code of Civil Procedure section 575.2, subdivision (a), in turn provides that such local rules may establish penalties and sanctions for noncompliance with any of the requirements thereof, including striking of all or part of a pleading, dismissal of an action or proceeding, or entry of judgment by default. However, section 575.2, subdivision (b), specifically states that "[i]t is the intent of the Legislature that if a failure to comply with these [local] rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

In the instant case, the trial court imposed on Wife the severe penalty of deeming her to have waived either objection to or denial of Husband's pretrial statement and request for admissions by which Husband claimed virtually all the property as his separate property. Our review of the record persuades us that this penalty was imposed on account of the fault of Wife's legal counsel, and not of Wife herself.

Husband urges that Wife is at fault because the settlement conference judge personally warned her on September 6, 1984, of the necessity of filing a pretrial statement and of the possible consequences of her failure to do so. We find this argument unpersuasive. Wife was just then in the process of changing her legal counsel. One week earlier, on August 30, 1984, the attorney who had been representing her had been permitted to withdraw. The order permitting his withdrawal was filed on September 14, 1984. Shortly thereafter, Wife obtained a new attorney, Lynn Young, who appeared as counsel on September 17, 1984.

There is nothing in the record to support a conclusion that Wife was responsible for the delay of any of her attorneys in the filing of a responsive pretrial statement. The original failure to file an adequate responsive pretrial statement in June 1984 clearly rested with Wife's attorney at that time, the same attorney who by the time of the settlement conference had obtained permission to withdraw as Wife's counsel of record. Three days after the filing of the order permitting this attorney to withdraw, Ms. Young

made her first appearance on Wife's behalf as counsel of record. Ms. Young stated in a declaration that she prepared an amended pretrial statement at that time, but due to an oversight on the part of her office staff it was not filed. The fact that Wife was effectively without counsel for a period of approximately one week does not, in our opinion, render her responsible for her attorney's failure to file a responsive pretrial statement in accordance with the applicable local rules. Moreover, this is not a case in which noncompliance with local rules was the result of the client's failure to cooperate with counsel. We would add, however, that our opinion should not be interpreted as precluding the trial court in a proper case from looking behind the conduct of an attorney to determine if responsibility for noncompliance rests with the client.

In *State of California* ex rel. *Public Works Bd.* v. *Bragg* (1986) 183 Cal.App.3d 1018 [228 Cal.Rptr. 576], modified 184 Cal.App.3d 1364b, a case of first impression, the Court of Appeal held that Code of Civil Procedure section 575.2, subdivision (b), protects a litigant from being sanctioned for failure to comply with the requirements of local rules where it is the litigant's legal counsel, and not the litigant him or herself, who is responsible for such noncompliance; and that where counsel does not invoke the statute to protect the client, the court itself must do so sua sponte. (*Id.,* at p. 1023.) After examining the legislative history of sections 575.1 and 575.2 in depth, the Court of Appeal found that "[s]ection 575.2, subdivision (b) is . . . an exception to the general rule that the negligence of an attorney is imputed to the client [citations], with the client's only recourse a malpractice action against the negligent attorney. [Citations.]" (*Id.,* at p. 1026.) To secure fair implementation of the statute, the court concluded "[a]fter due consideration . . . [that] the only possible way of ensuring the section is carried out is to require the court *on its own motion* to effect section 575.2, subdivision (b), *if the negligent counsel does not so move.* . . . [¶] We conclude section 575.2, subdivision (b), requires more than mere permissive court action; it *compels* court action to guarantee protection of an innocent party." (*Id.,* at pp. 1028-1029, italics in original.) To determine what penalties are appropriate, if any, the trial court should hold a hearing to fix responsibility for the failure to comply with local rules. (*Id.,* at p. 1029.)

We agree with the Court of Appeal in *Bragg, supra.* In this case, the practical effect of the trial court's action was to prevent the introduction of *any* evidence on the extent to which the property claimed by Husband as his separate property was in fact community property. By not inquiring into the question of responsibility for the failure to comply with local rules, and by imposing the harsh penalty which it did, the trial court effectively denied Wife's opportunity to dispute Husband's claims to the bulk of the couple's property. Wife was thus denied a trial on the merits. "By its literal

language, section 575.2, subdivision (b), applies where counsel has not complied with local court rules. Failure by either counsel, or the trial court, to invoke its provisions resulted in the imposition of sanctions which adversely affected the client's cause of action, contrary to legislative intent." (*Id.*, at p. 1030.) Because of this prejudicial error, we must reverse.

## III

■ Wife argues that the trial court denied her due process by applying Civil Code section 4800.2 in this case, thereby permitting Husband to recover the value of his separate property contributions to the value of the community residence on Lillian Way. Under the circumstances presented by this case, Wife's position is correct.

Civil Code section 4800.2, which became operative on January 1, 1984, provides that separate property contributions to the acquisition of community property must be reimbursed upon dissolution of marriage, unless the contributing spouse has waived the right to reimbursement in writing. This statute is in direct contravention of prior law, which had established precisely the opposite standard. Thus, prior to the effective date of the statute, a spouse who placed a separate property home in joint tenancy with the other spouse was presumed to have made a gift to the community, for which no reimbursement was allowed at the time of dissolution in the absence of an agreement or understanding between the parties permitting such reimbursement.

In the case of *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253], the Supreme Court held that the "retroactive, 180-degree departure from former law violates the parties' legitimate expectations while failing to advance the state interest in equitable dissolution of the marital partnership. As a result, retroactive application of [Civil Code] section 4800.2 to cases *pending* on January 1, 1984, impairs vested property interests without due process of law." (*Id.*, at p. 451, fn. omitted, italics added.) Similarly, in the case of *In re Marriage of Lachenmyer* (1985) 174 Cal.App.3d 558 [220 Cal.Rptr. 76], the Court of Appeal held that it was a denial of due process for a trial court to apply Civil Code section 4800.2 to an action that was pending before the statute went into effect, but in which the judgment dividing community property was issued after January 1, 1984. (*Id.*, at pp. 560-564.) In the case at bench, Husband's separate property interest in the Lillian Way residence had been put into joint tenancy *before* the effective date of Civil Code section 4800.2. Although trial of this matter took place after January 1, 1984, the action was commenced prior to that date, and the trial court's application of the statute in the instant case impairs vested property rights acquired by Wife on the basis of and in

reliance on prior law. Therefore we conclude that it constituted a denial of due process of law. (*Marriage of Fabian, supra,* 41 Cal.3d at p. 451.)[1]

## IV

■ Wife urges that it was error for the final judgment to have been signed by a judge other than the trial judge who had heard the evidence. We agree.

■ As a general rule, unless the decision of the trial court has been entered in the minutes and the judge who heard or tried the case is unavailable, the final judgment in any case tried without a jury "must be rendered by the judge who tried the case; it would be a denial of due process for a new judge to render a decision without having heard all of the evidence." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 45, p. 483; Code Civ. Proc., § 635; *Guardianship of Sullivan* (1904) 143 Cal. 462, 467 [77 P. 153]; *Rose* v. *Boydston* (1981) 122 Cal.App.3d 92, 97 [175 Cal.Rptr. 836].)

California Rules of Court, rule 232(a), states that "[o]n the trial of a question of fact by the court, the court shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. . . . [¶] *The tentative decision shall not constitute a judgment and shall not be binding on the court.* If the court subsequently modifies or changes its announced tentative decision, the clerk shall mail a copy of the modification or change to all parties who appeared at the trial." (Italics

---

[1] In addition, in accordance with the legislative intent expressed in Civil Code section 4800.1 as now enacted, Civil Code 4800.2 would be inapplicable to the instant action which was commenced prior to January 1, 1984.

Civil Code section 4800.1 which was amended by legislation in 1986 reads in pertinent part as follows: "(a) The Legislature hereby finds and declares as follows: [¶] (1) It is the public policy of this state to provide uniformly and consistently for the standard of proof in establishing the character of property acquired by spouses during marriage in joint title form, and for the allocation of community and separate interests in that property between the spouses. [¶] (2) The methods provided by case and statutory law have not resulted in consistency in the treatment of spouses' interests in property which they hold in joint title, but rather, have created confusion as to which law applies at a particular point in time to property, depending on the form of title, and, as a result, spouses cannot have reliable expectations as to the characterization of their property and the allocation of the interests therein, and attorneys cannot reliably advise their clients regarding applicable law. [¶] (3) Therefore, the Legislature finds that a compelling state interest exists to provide for uniform treatment of property; thus the Legislature intends that the forms of this section and Section 4800.2, operative on January 1, 1987, shall apply to all property held in joint title regardless of the date of acquisition of the property or the date of any agreement affecting the character of the property, and that that form of this section and that form of Section 4800.2 are applicable in all proceedings commenced on or after January 1, 1984. However, the form of this section and the form of Section 4800.2 operative on January 1, 1987, are not applicable to property settlement agreements executed prior to January 1, 1987, or proceedings in which judgments were rendered prior to January 1, 1987, regardless of whether those judgments have become final."

added.) As stated by the Supreme Court: "Until a judgment is entered, it is not effectual for any purpose . . . and at any time before it is entered, the court may change its conclusions of law and enter a judgment different from that first announced. [Citations.] Moreover, *a judge who has heard the evidence may at any time before entry of judgment amend or change his findings of fact.*" (*Phillips* v. *Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926], italics added.)

■ In the instant case, the "Statement of Intended Decision" filed by the trial court on June 12, 1985, was not the final statement of decision on the basis of which a formal judgment could be signed by the presiding judge of the court as a ministerial act. The tentative positions expressed by the court in respect to the fraud action, the division of property and attorney fees were all subject to change.

Moreover, the trial court specifically requested that Husband's attorney prepare "a proposed division of community property," and that this *proposed* division then be served on Wife and submitted to the court "for review." Obviously the court had not made a final determination on how the community property should be divided. No such review by the trial court of any "proposed division of community property" was ever made. Instead, Husband submitted a judgment setting forth a detailed division of property and the judgment was then signed by the acting presiding judge. Unlike this purported final judgment, the trial judge's "Statement of Intended Decision" did not make any division of extensive property of the parties. Thus, in addition to the fact that the trial judge did not make a final decision, the formal judgment signed and entered by the acting presiding judge was not in conformance with the tentative decision itself.

In short, the entry of the purported final judgment in this case was in violation of the requirements of the California Code of Civil Procedure and Rules of Court and the action must be reversed and remanded for a new trial. We considered the feasibility of just remanding the action with directions to the trial judge to render a judgment without a new trial, but in view of the other errors in the record that was not possible.

V

The portion of the judgment terminating the marital status and restoring the parties to the status of unmarried persons is affirmed. In all other respects, the judgment is reversed and both consolidated actions are remanded for a new trial.

The appellant Dorothy Colombo is entitled to an award of costs and attorney fees on appeal, and the trial court is directed to make such an

award after determining the amount of her reasonable attorney fees in prosecuting and maintaining this appeal.

White, P. J., and Scott, J., concurred.