13 Cal.App.4th 1099 (1993)
16 Cal. Rptr.2d 825
Estate of NATHANIEL H. MEEKER, Deceased.
FRANCIS G. WELTON et al., Petitioners and Appellants,
v.
DOROTHY KLEINBAUER, as Personal Representative, etc., Objector and Respondent.
Docket No. B067894.
Court of Appeals of California, Second District, Division One.
February 26, 1993.
*1101 COUNSEL
Petrulis & Lich and David E. Lich for Petitioners and Appellants.
Theodore A. Anderson for Objector and Respondent.
OPINION
VOGEL (Miriam A.), J.
We reverse a judgment entered against appellants Francis Welton, Jane Welton, Albert Welton, Bill Moore, Clark Moore and Dick Moore as a sanction for their attorney's conduct.

FACTS
Appellants filed a petition in the estate of Nathaniel H. Meeker, deceased, to recover losses suffered as a result of the estate's personal representative's (respondent Dorothy Kleinbauer) failure to consider the tax consequences of a sale of stock. Appellants successfully moved for summary adjudication on the liability issues and the trial court (not the judge who rendered judgment) entered an order determining that "there [was] negligence in not considering the tax consequences of some stock sales" and "that the sale of the stocks was a breach of fiduciary duty."
At some point, trial was set for February 19, 1992, in the probate department of the Los Angeles Superior Court. On February 11, respondent's attorney (Theodore A. Anderson) gave notice to appellants' attorney (David E. Lich) that he would be applying to the court ex parte on February 14 for an order continuing the trial in this case because he was engaged in another trial. Lich responded by facsimile letter, advising Anderson that he could not attend the ex parte hearing because he had another court appearance, giving Anderson permission to represent to the court that Lich did not oppose the request for a continuance, and asking Anderson to "[p]lease advise of the results of the hearing."
On February 14, Anderson presented his ex parte application to the court, explaining in his declaration that he was engaged in a jury trial in the Orange County Superior Court, and providing all the identifying information needed to permit verification of Anderson's assertions (the name and number of the case and the number of the trial department). Anderson explained that he could not reasonably have anticipated a conflict because the Orange County case had been set for a 10-day trial on January 6 and this case was not set for trial until February 19. But on January 6 the other case was trailed to January *1102 27 and then to February 3, and since the other court was dark on two days (one of which happened to be Feb. 19), it was taking three weeks to try a ten-day case.
Anderson's motion for a continuance was not ruled on until February 18, at which point it was summarily denied and Anderson was told by the clerk (in response to numerous phone calls from Anderson) that counsel were directed to appear on February 19. The record does not disclose whether Anderson was able to reach Lich on the 18th or whether Lich learned for the first time on February 19 that Anderson's request for a continuance had been denied. Both lawyers appeared on the 19th, at which time Lich informed the trial court that he "was under the impression that this case would be continued because Mr. Anderson was unavailable and was engaged in trial.... And the standards of judicial administration provide that when counsel is engaged in another trial, ... that will be considered to be good cause. And I believed that this court would grant the continuance based upon ... Mr. Anderson's representation that he was engaged in a jury trial in Orange County."
Although the trial court at first suggested the request for a continuance had been denied because Anderson "wasn't involved in that jury trial until about a week ago," later comments make it clear that an earlier request would have met the same resistance: "You know, if you put off going to trial because someone might be in a jury trial in L.A. or Orange County, you are never going to do anything because who knows when you ever get to jury trials. There is only one court that I know of where you can be assured that you are going to go to trial on the date that you are set and that's this department."
The trial court then commented upon the fact that there was "no joint trial statement."[1] Anderson then told the court he had talked to Lich in early January, to let him know that he might have to request a continuance because of a conflict with his Orange County case. The possibility of *1103 settlement was also discussed and Lich agreed to "speak with his six clients." Anderson's subsequent efforts to reach Lich during January were unsuccessful, but it is clear that those efforts were not made to arrange to meet and confer and prepare a joint trial statement (as Anderson wanted the trial court to believe) but solely in pursuit of the settlement discussions begun in January (as is demonstrated by letters Anderson has attached to his respondent's brief on this appeal).[2]
At this point, the court indicated it had "heard no reason for not complying with the court's joint trial statement" requirement, commented that both attorneys had incorrectly presumed the trial would be continued, and noted that there was no good cause for a continuance because the Orange County trial court was dark on the 19th and, had the parties prepared, they could have tried the case that day. For reasons which are not altogether clear, the fault for the failure to file the joint statement was placed at Lich's feet and the trial court was unconcerned about Anderson's failure to comply with the court's "instructions" by filing a separate statement. The court then ruled as follows: "I will find there is no good cause ... for the noncompliance with the joint trial statement. [Appellants], therefore, having no witnesses to testify, the petition for surcharge will be denied." Judgment was entered and this appeal followed.

DISCUSSION
Appellants contend the trial court's denial of their petition amounted to an unauthorized and unjustified sanction. We agree.
(1) First, the parties were never ordered to file a "joint trial statement" and no such statement is required by the probate policy memorandum or the civil trials manual of the Los Angeles Superior Court (or, as far as we can tell, by any other rule). The idea of the joint statement comes from the memorandum described in footnote 1, ante, which, by its own terms, is nothing more than a list of "instructions" and nothing in the record suggests compliance with the "instructions" was ever ordered. Although local policies and rules adopted in compliance with subdivision (a) of section 575.1 of the *1104 Code of Civil Procedure[3] are enforceable and are not mere suggestions (§ 575.2, subd. (a); Mann v. Cracchiolo (1985) 38 Cal.3d 18, 28-29 [210 Cal. Rptr. 762, 694 P.2d 1134]), we find no authority for the proposition that disobedience of an informally distributed memorandum explaining the court's requirements justifies the sanction imposed in this case. And although it is true, as respondent contends, that a court may fashion specific procedures as needed for any given case (James H. v. Superior Court (1978) 77 Cal. App.3d 169, 175 [143 Cal. Rptr. 398]), such procedures are a fortiori enforceable only if they are imposed on the parties by order of the court.[4]
Second, characterization of the memorandum as a "rule" would not support the trial court's action in this case because subdivision (b) of section 575.2 provides that "if a failure to comply with [local] rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto." If anyone was to blame for this fiasco, it was the lawyers, not the parties. (See State of California ex rel. Public Works Bd. v. Bragg (1986) 183 Cal. App.3d 1018, 1026 [228 Cal. Rptr. 576] [§ 575.2, subd. (b), is an exception to the general rule that the negligence of an attorney is imputed to the client, with the client's only recourse a malpractice action against the negligent attorney]; see also In re Marriage of Colombo (1987) 197 Cal. App.3d 572, 579-580 (242 Cal. Rptr. 100)]; Moyal v. Lanphear (1989) 208 Cal. App.3d 491, 503 [256 Cal. Rptr. 296] [the drastic measure of dismissal should be used only where there is a clear showing that the client is the cause of counsel's failure to comply with the rules]; Massie v. AAR Western Skyways, Inc. (1992) 4 Cal. App.4th 405, 412 [5 Cal. Rptr.2d 654].)
Third, we reject respondent's suggestion that appellants' failure to bring witnesses to court on the 19th independently supports denial of appellants' petition to surcharge the estate. (See § 594, subd. (a).) Nothing in the record shows one way or the other whether either party had witnesses in court and there is no reason to presume they were not there. Contrary to respondent's assertion, the trial court did not suggest that its ruling was made on this ground. Read in context, the court said only that Lich's failure to file a joint statement, which would have included a list of his witnesses and a summary of their testimony, deprived his clients of the right to call any witnesses and that, "therefore, having no witnesses to testify, [appellants'] petition for surcharge will be denied." No matter how you look at it, it all goes back to the joint statement.
*1105 Fourth and finally, a balance must be struck between the trial court's right to run a tight ship and its obligation to provide a meaningful forum for litigants. All courts, but the trial courts in particular, are overworked and understaffed and until recently justice was frequently delayed and, as a result, sometimes denied. Then along came the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.), bringing with it individual calendaring courts and a legislative mandate to dispose of 90 percent of all civil cases within one year of filing and the rest within two years. (Super. Ct. L.A. County Rules, rule 1300.4.) We consider it immaterial that the probate case before us is exempt from formal fast-track rules (Super. Ct. L.A. County Rules, rule 1302.2). It is not exempt from current judicial attitudes about case dispositions.[5]
We do not question the wisdom of fast-track concepts or the indisputable fact that they have dramatically decreased civil court backlogs.[6] But we do question the increasing number of trial court decisions reflecting an attitude of absolute adherence to time standards without regard to the courts' raison d'etre. And we question the absence of balance. (2) While it is true that a trial judge must have control of the courtroom and its calendar and must have discretion to deny a request for a continuance when there is no good cause for granting one, it is equally true that, absent circumstances which are not present in this case, a request for a continuance supported by a showing of good cause usually ought to be granted. At a minimum, one party's good faith request for a continuance ought not to be used as a reason to penalize the other party's failure to comply with a nonrule.
This case is but one example of a problem we see all too often. Trial judges are required to manage increasing caseloads with decreasing resources, disposing of cases as fast as they can. To do this, judges frequently adopt procedures to enhance their efficiency (such as a joint trial statement) and, to avoid down time, take a forceful position discouraging or forbidding continuances. At the same time, most lawyers are doing the best they can to represent their clients and earn a living, attempting to juggle trials in two or more courts, each presided over by a judge who sometimes has to trail cases *1106 or otherwise upset the lawyers' efforts to manage their own calendars. Although in this instance Anderson's request for a continuance would in no way excuse the failure of both attorneys to prepare a joint statement if they had been ordered to do so, the problem is that no such order was made and that, even if it had been, its violation was not the fault of any party.
The tension between the courts and the attorneys is apparent. The solution is not and we do not have some flippant answer. Until one is found, however, we need to remember that all of us are here to serve the public and that this cannot be done when judges are inundated with fast-track statistics and cheerleader attitudes about case disposition numbers which never seem to take into account the rights of the parties.
We do not know how much money is at issue in this case but we do know it is an amount sufficient to cause the parties to litigate their dispute. And we do know that where, as here, parties have obtained a determination of the liability issues, a court should think twice before depriving them of their day in court on the damage issues. Efficiency cannot be favored over justice. It follows necessarily that we do not believe appellants should have been deprived of their day in court.

DISPOSITION
The judgment is reversed with directions to the trial court to set the matter for trial. Appellants are to recover their costs of appeal.
Spencer, P.J., and Ortega, J., concurred in the result only.
NOTES
[1] The "joint trial statement" is explained in a three-page typed memorandum on the trial court's letterhead, entitled "Mandatory Joint Trial Statement Conference for Short Cause Matters." It is in the form of a photocopied courtroom handout, not an order or anything akin to an order. Among other things, the memorandum states that a "mandatory joint trial statement conference" will be held in every contested case set for trial in the probate department. It calls for the attorneys to meet and confer at least 30 days before trial to prepare a "joint trial statement," and for the filing of the statement at least 10 days before trial. If the parties are unable to agree on a joint statement, each party is to file a separate statement. The required contents of the statement are listed (among other things, it must include a list of witnesses and a summary of each witness's testimony) and, under the heading "Sanctions," attorneys are advised that a failure to comply with the court's "instructions" might result in monetary sanctions or "any calendar action deemed appropriate in the court's discretion."
[2] We are unimpressed by Anderson's position in this case. Aside from attempting to mislead the trial court to believe he had been trying for months to sit down with Lich to prepare a joint statement, Anderson's brief on appeal includes too many half-truths. For example, he tells us (without citation to the record) that, "[d]espite being engaged in trial in Orange County, on February 19, [he] appeared at court prepared for trial" in this case. In his declaration filed in support of his request for a continuance, Anderson admitted the Orange County trial court was dark on February 19.
[3] Unless otherwise stated, all section references are to the Code of Civil Procedure.
[4] Effective January 1993 (10 1/2 months after the trial date in this case), a "joint trial statement" requirement was added to the Los Angeles Probate Policy Manual as section 3:6.01(2).
[5] But the fact that this is not a fast-track case allows us to ignore the conflict in the cases about whether subdivision (b) of section 575.2 applies to fast-track cases. (See Moyal v. Lanphear, supra, 208 Cal. App.3d 491; Cooks v. Superior Court (1990) 224 Cal. App.3d 723 [274 Cal. Rptr. 113]; Intel Corp. v. USAIR, Inc. (1991) 228 Cal. App.3d 1559 [279 Cal. Rptr. 569]; Laguna Auto Body v. Farmers Ins. Exchange (1991) 231 Cal. App.3d 481 [282 Cal. Rptr. 530]; Youngworth v. Stark (1991) 232 Cal. App.3d 395 [283 Cal. Rptr. 668]; compare State of California ex rel. Public Works Bd. v. Bragg, supra, 183 Cal. App.3d 1018.)
[6] Only a cynic would cite fast track as a classic example of the Hawthorne Effect. (See Massaro, Significant Silences: Freedom of Speech in the Public Sector Workplace (1987) 61 So.Cal.L.Rev. 3, 55, fn. 228.)