[No. B171030. Second Dist., Div. Six. Feb. 23, 2004.]

JOHN S. HERNANDEZ, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
DAVID NEAL, Real Party in Interest.

**1244**

Counsel

Jacobs, Jacobs & Rosenberg, George M. Rosenberg and Anthony C. Ferguson for Petitioner.

No appearance for Respondent.

Law Offices of Robert J. Brantner, Harveen S. Simpkins and Robert J. Brantner for Real Party in Interest.

Opinion

**YEGAN, Acting P. J.**— ▇ If plaintiff's counsel's serious physical illness and its debilitating effects culminating in death during the final stages of litigation are not good cause for continuing a trial and reopening of discovery, there is no such thing as good cause. A plaintiff in a personal injury action is not chargeable with the continued good health of his or her attorney. Forcing such a plaintiff to trial without counsel or adequately prepared counsel is not likely to ensure fairness, the overall policy of the law. (*Gardiner Solder, Co. v. SupAlloy Corp., Inc.*(1991) 232 Cal.App.3d 1537, 1543 [284 Cal.Rptr. 206].)

▇ The Court of Appeal does not and should not micromanage law and motion rulings. Absent extraordinary circumstances, most writ applications seeking review of discretionary rulings are easily denied because of traditional appellate rules. (E.g., *Estate of Gilkison* (1997) 65 Cal.App.4th 1443 [77 Cal.Rptr.2d 463], see *post,* p. 1246.) However, some writ applications are more "writ worthy" than others. As we shall explain, absent our intervention here, petitioner would face the probability of trial without counsel or adequately prepared counsel in a serious personal injury trial.

*Facts and Procedural History*

Petitioner was seriously injured in an automobile collision with real party in interest David Neal. He retained Attorney Stewart to represent him. Stewart filed the personal injury complaint in October 2002, represented petitioner at his deposition, took real party's deposition in May 2003, attended a settlement conference in June 2003, and participated at an arbitration hearing on July 8, 2003. The arbitrator awarded petitioner $850,000. On July 14, 2003, Stewart served real party with a statutory offer to compromise for $392,000. On July 28, 2003, he designated expert witnesses on the subject of damages. He did not do so on liability issues. Stewart missed the August 18, 2003, deadline to supplement his expert

witness list even though real party had designated an expert on liability issues and Stewart had not. In early September, petitioner learned of Stewart's illness. On September 12, 2003, three days before the initial trial date, the trial court heard Stewart's ex parte application for a continuance due to his illness. It continued the trial date to December 15, 2003, but Stewart died on September 20, 2003.

Petitioner learned of Stewart's death nine days later. That day he called a friend for an attorney referral. The next day, he contacted a new lawyer, Rosenberg. On October 2, 2003, petitioner met with Rosenberg who advised him that his own trial schedule prevented him from taking the case unless the December 15, 2003, trial date could be continued. He also advised petitioner to seek a continuance and permission to reopen discovery and supplement his expert witness list.

Petitioner's ex parte application for that relief was heard on October 17, 2003. Real party opposed the continuance, arguing the trial date had already been continued once to accommodate Stewart's illness. Real party asserted he would be "at a disadvantage" if petitioner designated additional experts because costs would increase. He also claimed petitioner had unreasonably delayed finding new counsel. Real party concluded by asserting: "[I]t is obvious that plaintiff would not be injuriously affected by denial of the continuance. The time of the court should not be wasted by failure of plaintiff and counsel to be prepared and for plaintiff to shop around for attorneys."

At the hearing, the trial court noted that it continued the first trial date for three months due to Stewart's illness and said: "And now a month after he dies, you come in and ask for more time. That could have been done better." Petitioner explained that he learned of Stewart's death on September 29, 2003, and that he started looking for a new lawyer that day. He denied real party's claims he had "known for months" that Stewart was terminally ill. Real party contended petitioner should not be permitted to supplement his expert witness list because the terminally ill Stewart had missed the deadline to do so: "That was his decision as attorney. You can't change that after you die. That will prejudice my client." Without requiring real party to provide any additional explanation of the potential prejudice, the trial court continued the trial date to January 26, 2004, and denied the request to reopen discovery. The trial court apparently did not consider that Rosenberg was unable to start trial on that date, or that petitioner was scheduled for spinal surgery December of 2003.

## Abuse of Discretion as a Matter of Law

Petitioner contends the continuance granted was too brief because it conflicted with his prospective attorney's trial schedule and his own need for

surgery. He also contends the trial court's refusal to reopen discovery was an abuse of discretion because Stewart was too ill to prepare the case properly. We agree with each of these contentions. Petitioner has demonstrated an abuse of discretion as a matter of law.

" ' "The term [judicial discretion] implies the absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [Par.] To exercise the power of judicial discretion all the material facts in evidence must be known and considered, together also with the legal principles essential to an informed, intelligent and just decision." [Fn. omitted.]' (*In re Cortez* (1971) 6 Cal.3d 78, 85–86 [98 Cal.Rptr. 307, 490 P.2d 819]; see also *In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200 [280 Cal.Rptr. 565].) 'The appropriate [appellate] test for abuse of discretion is whether the trial court exceeded the bounds of reason.' (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)" (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448–1449 [77 Cal.Rptr.2d 463].)

■ The trial court has discretion in ruling on requests to extend discovery deadlines or continue trial dates. Equally clear are the trial court's statutory obligations to enforce discovery cutoff dates and to set firm trial dates. (Code Civ. Proc., §§ 2024, 2034; Gov. Code § 68607, subds. (e)–(g); Cal. Stds. Jud. Admin., § 9.) Strict adherence to these delay reduction standards has dramatically reduced trial court backlogs and increased the likelihood that matters will be disposed of efficiently, to the benefit of every litigant. (See, e.g., *Estate of Meeker* (1993) 13 Cal.App.4th 1099, 1105 [16 Cal.Rptr.2d 825].) Here, the trial court's orders promote judicial efficiency by maintaining strict time deadlines.

But efficiency is not an end in itself. Delay reduction and calendar management are required for a purpose: to promote the just resolution of cases on their merits. (*Thatcher* v. *Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1085 [94 Cal.Rptr.2d 575]; Gov. Code, § 68507; Cal. Stds. Jud. Admin., § 2.) Accordingly, decisions about whether to grant a continuance or extend discovery "must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency." (*Bahl* v. *Bank of America* (2001) 89 Cal.App.4th 389, 398–399 [107 Cal.Rptr.2d 270].) What is required is balance. "While it is true that a trial judge must have control of the courtroom and its calendar and must have discretion to deny a request for a continuance when there is no good cause for granting one, it is equally true that, absent [a lack of diligence or other abusive] circumstances which are not present in this case, a request for a

continuance supported by a showing of good cause usually ought to be granted." (*Estate of Meeker, supra,* 13 Cal.App.4th at p. 1105.)

That balance is missing here. The trial court held petitioner and his prospective new counsel to discovery deadlines that were set before Stewart's death, without any allowance for the fact that Stewart's illness affected his trial preparation. Stewart was suffering from pancreatic cancer during the closing phases of discovery. He died 33 days after the last date on which to supplement his expert witness list and only five days after the initial trial date. It is possible that Stewart provided effective representation during this crucial phase of the litigation. But common sense and respect for the grim reality of terminal illness make it more likely that, during the waning period of his life, Stewart was not as organized, focused or vigorous an advocate as he had been in healthier times. The fact that Stewart designated no experts on liability issues, even though real party included an accident reconstruction expert on his list, demonstrates the point.

Balanced against the prejudice petitioner suffered due to the terminal illness and death of his attorney is real party's claim that he would be prejudiced by the extension of the discovery cutoff date and a trial continuance. This conclusional claim has never been supported with any evidence. Instead, real party complains that new experts and more discovery would increase costs. He also asserts: "There is no evidence that prior counsel was not capable of assessing the strengths and weaknesses of [the] case to properly conduct discovery due to the effects of cancer."

Real party's claims would be more plausible if Stewart had been healthy in the weeks leading up to the initial trial date, and then died in an accident or in some other unforeseen manner. But he wasn't healthy. He was dying of pancreatic cancer. We cannot assume that Stewart was able to conduct business as usual while in the grip of such a severe illness. The trial court failed to appreciate that this medical condition adversely impacted his trial preparations. Similarly, real party's assertion that petitioner was delaying the trial so he could "shop around for attorneys" would make sense if petitioner had been dilatory in his search. But he wasn't. He started looking for a new lawyer the very day he learned of Stewart's death, and he filed his ex parte application only 12 business days later. Finally, petitioner informed the trial court that the December trial date conflicted with his need to have spinal surgery sometime between December 2003 and February 2004. The trial court's failure to consider petitioner's medical needs in setting the trial date is just one more indication that the trial court's order was an abuse of discretion.

■ The death or serious illness of a trial attorney or a party "should, under normal circumstances, be considered good cause for granting the

continuance of a trial date[.]" (Cal. Stds. Jud. Admin., § 9.) The same circumstances should generally constitute good cause to reopen discovery after a trial date has been continued. (Code Civ. Proc., § 2024, subd. (e).)

Let a peremptory writ of mandate issue directing the trial court to vacate its orders of October 17, 2003 and enter new orders continuing the trial to a date after June 1, 2004, permitting petitioner to supplement his designation of expert witnesses and extending the discovery cutoff date. The order to show cause, having served its purpose, is discharged. Costs to petitioner.

Coffee, J., and Perren, J., concurred.

On February 24, 2004, the opinion was modified to read as printed above.