Filed 9/10/20  P. v. The North River Ins. Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THE NORTH RIVER<br>INSURANCE CO., et al.<br><br>    Defendants and Appellants. | B296412<br><br>(Los Angeles County<br>Super. Ct. No. SJ4504) |

APPEAL from an order of the Superior Court of Los Angeles County, Alison Estrada, Judge.  Affirmed.

Jefferson T. Stamp for Defendants and Appellants.

Mary C. Wickham, County Counsel, Adrian G. Gragas, Assistant County Counsel, and Jonathan McCaverty, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Bad Boys Bail Bonds, acting as the agent for The North River Insurance Company (collectively, North River), posted a bail bond to secure the release of a defendant in a criminal proceeding. The trial court ordered the bond forfeited when the defendant failed to appear for the preliminary hearing. The court entered summary judgment against North River under section 1306 of the Penal Code. North River appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2017 the People charged Eduardo Cardenas with second degree robbery (Pen. Code, § 211).[1] North River posted a $50,000 bail bond to secure Cardenas's release. Cardenas appeared at the arraignment on January 24, 2017, where the trial court set the preliminary hearing for February 6, 2017 and ordered Cardenas to return on that date. Cardenas did not appear at the preliminary hearing, and the court ordered the bail forfeited.

On February 14, 2017 the trial court mailed notice of the forfeiture to North River, triggering a 185-day period for Cardenas to appear or North River to seek to set aside the forfeiture prior to the trial court entering summary judgment against North River. (See §§ 1305, subds. (b)-(c), 1306, subd. (a).) On August 15, 2017 Bad Boys Bail Bonds filed a motion to extend the appearance period, which the trial court granted on September 8, 2017, extending the period to March 7, 2018. North River did not move to set aside the forfeiture before the

---

[1] Undesignated statutory references are to the Penal Code.

`

extended appearance period expired, and on March 19, 2018 the trial court entered summary judgment in the amount of $50,370 ($50,000 for the bond, plus $370 in court costs) against North River.

On October 18, 2018 North River filed a motion to set aside the summary judgment, vacate the forfeiture, and exonerate the bond. North River argued the judgment was void because the judge who initially declared the bond forfeited when Cardenas failed to appear at the preliminary hearing was not the same judge who subsequently signed the judgment against North River. North River also argued the bond was void because the trial court violated Cardenas's constitutional rights by setting the amount of his bail without considering either Cardenas's ability to pay or less restrictive bail conditions. The trial court denied the motion. North River timely appealed.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

A "'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657; accord, *People v. International Fidelity Ins. Co.* (2017) 11 Cal.App.5th 456, 460; see *People v. Bankers Ins. Co.* (2016) 247 Cal.App.4th 1004, 1011 ["'A bail bond is a contract between the government and the surety.'"].) Sections 1305 to 1306 govern bail forfeiture. Section 1305, subdivision (a)(1), provides a "court shall in open court declare forfeited the undertaking of bail . . . if, without sufficient excuse, a defendant

3

fails to appear" for one of the proceedings enumerated in the statute. "[T]he trial court is required to declare bail forfeited" if the defendant fails to appear. (*International Fidelity Ins. Co.*, at p. 460.) Where (as here) "the amount of the bond . . . exceeds four hundred dollars ($400)," the clerk of the court must mail notice of the forfeiture to the surety. (§ 1305, subd. (b)(1).) The mailing triggers a 185-day "appearance period" (180 days plus five days for mailing) during which "the surety on the bond is entitled to move to have the forfeiture vacated and the bond exonerated on certain grounds, such as an appearance in court by the accused." (*American Contractors Indemnity Co.*, at p. 658; see § 1305, subds. (b)(1), (c)(1)-(3).)

Section 1306, subdivision (a), provides that, if the court has not set aside the forfeiture by the end of the appearance period, the court "shall enter a summary judgment" against the surety in "the amount of the bond plus costs." (See *People v. International Fidelity Ins. Co.*, *supra*, 11 Cal.App.5th at pp. 460-461 ["If the surety fails to obtain relief from the forfeiture . . . the court shall enter summary judgment against the surety on the bond, plus costs."].) The Penal Code also requires that, for a surety to post the bond, the surety must execute a written undertaking acknowledging that, "[i]f the forfeiture of this bond be ordered by the court, judgment may be summarily made and entered forthwith against" the surety "as provided by Sections 1305 and 1306." (§§ 1278, subd. (a), 1287, subd. (a).)

Because a court enters summary judgment under section 1306 "pursuant to a contractual consent in the bond agreement" (*People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919, fn. 2), the judgment "is a consent judgment which is normally not appealable" (*County of Los Angeles v. American Bankers Ins. Co.*

4

`

(1996) 44 Cal.App.4th 792, 795).  (See *Merritt v. J. A. Stafford Co.* (1968) 68 Cal.2d 619, 623 ["a judgment on an appeal bond may not be appealed by the surety . . . because the judgment against the surety is a consent judgment"]; *People v. American Surety Co.* (2019) 31 Cal.App.5th 380, 389 [same]; *People v. International Fidelity Ins. Co.* (2007) 151 Cal.App.4th 1056, 1059 ["Summary judgments entered on forfeitures of bail are consent judgments . . . not usually subject to challenge."].)  However, "[a]n order denying a motion to set aside summary judgment on a bail bond forfeiture is an appealable order."  (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 554; accord, *American Surety Co.,* at p. 394; *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592.)

We generally review an order denying a motion to vacate a summary judgment following forfeiture of a bail bond for abuse of discretion.  (See *People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804 ["'Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard.'"]; *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 308, 314 [same]; *County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542 ["'[t]he abuse of discretion standard applies to the trial court's resolution of a motion to set aside a bail forfeiture"].)  "'When the facts are undisputed and only legal issues are involved,'" however, we "'conduct an independent review.'"  (*The North River Ins. Co.,* at p. 804; accord, *Financial Casualty & Surety, Inc.,* at p. 314; see *People v. International Fidelity Ins. Co., supra,* 11 Cal.App.5th at p. 461 [when "the issue is one of statutory construction or contract interpretation, and the evidence is undisputed, we review the order de novo"].)

B.   *Section 1306 Does Not Require the Judge Who Declared the Forfeiture To Enter Summary Judgment*

North River argues that, because section 1306, subdivision (a), states "the court which has declared the forfeiture shall enter a summary judgment" against the surety after the end of the appearance period, the same judge who declares the forfeiture must also sign the judgment.  Here, the judge who declared the forfeiture when Cardenas failed to appear for his preliminary hearing was not the same judge who signed the summary judgment against North River.

"Statutory interpretation requires us 'to ascertain and effectuate the intended legislative purpose.'  [Citation.]  We consider the provisions' language in its 'broader statutory context' and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion."  (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 189.)  "'If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources.'"  (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 478; see *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089-1090.)  "If an ambiguity remains after this preliminary textual analysis, we may consider extrinsic sources such as legislative history and contemporaneous administrative construction."  (*ZB*, at p. 189.)

North River essentially asks us to interpret "the court which has declared the forfeiture" as "the judge which has declared the forfeiture."  As this Court held in *People v. The North River Ins. Co.* (2020) 53 Cal.App.5th 559 (*North River II*), however, section 1306 "does not state, and does not mean, the same judge of the court must enter both" the order declaring bail

forfeited and the subsequent order entering summary judgment against the surety because "it is the court that has jurisdiction of the matter, not a particular judge." (*North River II,* at p. 565.)

Since 1966 the California Constitution has defined "a superior court" as all of the judges serving on that court. (See Cal. Const., art. VI, § 4 ["[i]n each county there is a superior court of one or more judges"];[2] *People v. Konow* (2004) 32 Cal.4th 995, 1018 ["'jurisdiction is vested by the Constitution in the court and not in any particular judge or department thereof; and . . . whether sitting separately or together, the judges hold but one and the same court'"]; *Hamblin v. Superior Court* (1925) 195 Cal. 364, 368 ["'A court is an instrumentality of government. . . . A time when, a place where, and the persons by whom, judicial functions are to be exercised are essential to complete the idea of a court.'"]; *North River II*, *supra*, 53 Cal.App.5th at p. 564 ["A court is a single entity consisting of multiple judges or bench officers."].) In 1977 the Legislature added the provision of section 1306, subdivision (a), stating that the court which[3] has declared the forfeiture shall enter a summary judgment. (Stats. 1977, ch. 889, § 3.5, p. 2662.) We presume the Legislature was aware of the Constitution's definition and would have used the term "the judge" (or some other unambiguous term) rather than "the

---

[2]     Although article VI, section 4 of the California Constitution has been amended, the provision defining a superior court has not changed. (See Cal. Const., former art. VI, § 4, as adopted Nov. 8, 1966.)

[3]     The that/which rule requires "that" here, but we use "which" to be consistent with the language of the statute. (See Garner, Garner's Modern American Usage (3d ed. 2009) pp. 806-807.)

`

court" if the Legislature intended to refer to a specific judge sitting on a superior court. (See *Mosser Companies v. San Francisco Rent Stabilization & Arbitration Bd.* (2015) 233 Cal.App.4th 505, 514 ["'[t]he Legislature is presumed to know existing law when it enacts a new statute'"]; *Ramos v. Superior Court* (2007) 146 Cal.App.4th 719, 727 ["We presume the Legislature knew what it was saying and meant what it said."].) The Legislature has also used the term "judge" in other statutes when it intended to refer to a specific judge of the court. (See, e.g., § 1538.5, subd. (p) ["[r]elitigation of [a] motion" to return property or suppress evidence granted in favor of a defendant "shall be heard by the same judge who granted the motion at the first hearing if the judge is available"]; Code Civ. Proc., § 170.6, subd. (a)(1) ["A judge, court commissioner, or referee of a superior court of the State of California shall not try a civil or criminal action" if "the judge or court commissioner is prejudiced against a party or attorney"]; Code Civ. Proc., § 635 ["In all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court or by a judge designated by the presiding judge."].)

Moreover, to the extent there is any ambiguity in section 1306, the legislative history demonstrates the Legislature did not intend that the judge who entered the summary judgment had to be the judge who declared the forfeiture. (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1335 [even where the meaning of statutory language "is plain, it is helpful to look at [the statute's] legislative history"].) Prior to 1927, section 1306 did not provide for a summary judgment procedure following bail forfeiture;

8

instead, the district attorney could "proceed by action against the bail . . . ." (Former § 1306, added by Stats. 1905, ch. 539, § 2, p. 702 and amended by Stats. 1927, ch. 734, § 1, pp. 1385-1386.) In 1927 the Legislature amended section 1306 to add a summary judgment procedure. As relevant here, the original summary judgment procedure differentiated between courts that had "civil jurisdiction to render judgment in an action arising upon a contract of similar nature and amount" as the bond (for example, a superior court), and those that did not (for example, a municipal court or a justice court). (Stats. 1927, ch. 734, § 1, pp. 1385-1386.)[4] "[I]f the court which ha[d] declared the [bond] forfeited" had jurisdiction to render judgment in the amount of the bond, the court had to "enter a summary judgment against" the surety. (*Ibid.*) But if the court which declared the bond forfeited did not have jurisdiction to render judgment in the amount of the bond, the court had to "deliver to the district attorney of the county in which said court is located said bond, together with a certified copy of its order declaring the same forfeited . . . ." (*Ibid.*) After the district attorney "file[d] the bond and said certified copy of forfeiture in a court" having jurisdiction to render judgment in the amount of the bond, the court in which the district attorney filed the bond had to "enter a summary judgment against" the surety. (*Ibid.*) By adopting a procedure that permitted the district attorney to transfer the bond

---

[4]     California voters did not eliminate justice courts and incorporate them into municipal courts until 1994 (see Prop. 191, as approved by voters, Gen. Elec. (Nov. 8, 1994)) and did not consolidate superior and municipal courts until 1998 (see Prop. 220, as approved by voters, Prim. Elec. (June 2, 1998)). (See *Persky v. Bushey* (2018) 21 Cal.App.5th 810, 824, fn. 13.)

forfeiture to a new court and that authorized the new court to enter summary judgment, the Legislature could not have intended that the judge who entered summary judgment had to be the judge who declared the bond forfeited.

In 1977 the Legislature amended section 1306 "specifically to eliminate the administrative difficulties related to transferring a matter to another court for entry of summary judgment when the first court lacked jurisdiction to enter the summary judgment." (*North River II*, *supra*, 53 Cal.App.5th at p. 566.) The amended section 1306 provided that, when the appearance period expired after a court declared a bond forfeited, "the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against" the surety. (Stats. 1977, ch. 889, § 3.5, p. 2662.) But this amendment had nothing to do with requiring the judge who declared the forfeiture to enter summary judgment; "the Legislature's concern was with the jurisdiction of the forfeiture court to enter summary judgment, not with the identity of the particular bench officer making that decision." (*North River II*, at p. 566; see Assem. Com. on Judiciary, Bill Digest on Sen. Bill No. 1107, as amended June 2, 1977 [explaining that the purpose of this amendment was to grant "jurisdiction to enter summary judgment" to "a municipal or justice court [that] orders forfeiture on a bond in excess of $5,000," so that it would not have to "transfer the action to the superior court for summary judgment"]; Cal. Law Revision Com., com. West's Ann. Pen. Code (2013 ed.) foll. § 1306 ["Before unification, it was necessary to make clear that a municipal court was authorized to enter summary judgment on a bail forfeiture even though the amount of bail exceeded the jurisdictional limit of the municipal court."]; see also *HLC*

10

`

*Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 62 ["the Commission's official comments reflect the intent of the Legislature . . . and are entitled to substantial weight"].)  North River does not cite any legislative history or provide any evidence to support its contention that the Legislature also intended to protect the rights of the surety in some way by requiring the judge who declared the forfeiture to be the judge who entered summary judgment.[5]

North River relies on a single line from *People v. Frontier Pacific Ins. Co.* (2000) 83 Cal.App.4th 1289 (*Frontier*), where the court stated:  "It is clear from the plain language of sections 1305 and 1306 that the court (i.e. the judge) and the clerk have distinct functions." (*Frontier*, at p. 1295.)  North River argues the decision in *Frontier* reflects the Legislature's intention to use the term "court" synonymously with "judge."  But it doesn't.  In *Frontier* the clerk of the court, rather than the judge, signed the judgment against the surety.  (*Id.* at p. 1294.)  The court in *Frontier* held that, because "the rendition of judgment is not a ministerial act which may be delegated to the clerk," a "judge [must] sign the judgment." (*Id.* at pp. 1294-1295.)  The court did not consider whether the same judge who declared forfeiture must sign the summary judgment.

---

[5]      In 2012 the Legislature further amended section 1306 by removing the language "regardless of the amount of the bail." (Stats. 2012, ch. 470, § 50.)  The purpose of this amendment was to remove language that was "obsolete due to trial court unification."  (Cal. Law Revision Com. com., West's Ann. Pen. Code (2013 ed.) foll. § 1306.)

`

C.  *The Trial Court Did Not Violate North River's Due Process Rights*

North River also argues that, even if section 1306 does not require the judge who declared the forfeiture to enter summary judgment, the court nonetheless violated North River's due process rights "because [the judgment] was entered by a judge who did not hear the evidence of the bail forfeiture."   North River relies on *European Beverage, Inc. v. Superior Court* (1996) 43 Cal.App.4th 1211, 1214 (*European Beverage*), where the court stated:  "It is considered a denial of due process for a new judge to render a final judgment without having heard all of the evidence."  As this court held in *North River II*, *supra*, 53 Cal.App.5th 559, however, there is "no due process violation" where a new judge simply enters summary judgment based on a record reflecting the bond forfeiture, "the expiration of the appearance period," and "the absence of a pending motion to vacate forfeiture."  (*Id.* at p. 567.)

"Both the federal and state Constitutions compel the government to afford persons due process before depriving them of any property interest."  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) 'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."' [Citations.]  The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.'" (*Ibid.*; accord, *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1259.)  California courts "have adopted the *Mathews* [*v. Eldridge* (1976) 424 U.S. 319, 96 S.Ct. 893] balancing test as the default framework for analyzing challenges to the sufficiency of

`

proceedings under" due process, which requires consideration of "the private interest affected, the risk of erroneous deprivation, and the government's interest." (*Today's Fresh Start, Inc.*, at p. 213; see *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 174 ["[i]n determining whether due process was afforded here, we adopt the balancing test set forth in *Mathews v. Eldridge*"].)

North River is correct that in a court trial "[a] party litigant is entitled to a decision upon the facts of his case from the judge who hears the evidence . . . ." (*In re Guardianship of Sullivan* (1904) 143 Cal. 462, 467-468; see *id.* at pp. 463, 467 [party was entitled to have the judge who heard the evidence and saw the witnesses enter judgment]; *European Beverage, supra*, 43 Cal.App.4th at p. 1216 [party was entitled to have the judge who decided the first phase of a bifurcated trial in civil action hear the second phase of the trial]; *In re Marriage of Colombo* (1987) 197 Cal.App.3d 572, 581-582 [judge who did not hear the evidence could not sign a judgment for dissolution of marriage]; *Armstrong v. Picquelle* (1984) 157 Cal.App.3d 122, 125, 127-128 [in action to dissolve a partnership and for an accounting, a new judge could not enter judgment adopting the tentative decision of a prior judge who had heard the evidence].) But North River does not cite any authority extending this principle beyond a court trial, and certainly not to the type of summary proceeding described by sections 1305 and 1306. And contrary to North River's contention, due process does not require that in every proceeding where the government deprives a person of a property interest, the decisionmaker who renders a final decision must be the same decisionmaker who hears the relevant evidence. (See *Nat. Auto & Cas. Co. v. Ind. Acc. Com.* (1949) 34 Cal.2d 20, 30 ["it

13

is not a denial of due process for [a] commission to base its award on a report of a referee although it does not review the record"], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010; *Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568, 576 ["The use of a single hearing officer, whose findings and proposed decision are adopted by [a] public agency, complies with due process."]; *Strode v. Board of Medical Examiners* (1961) 195 Cal.App.2d 291, 293, 298 [State Board of Medical Examiners could issue a decision revoking doctor's license based on a hearing officer's proposed decision "'without reading or otherwise familiarizing itself with the record'"].)

Here, the trial court's summary judgment against North River followed neither a court trial nor a similar adversarial proceeding where the parties presented evidence. (See *North River II*, *supra*, 53 Cal.App.5th at p. 567 ["Summary judgment following a declaration of forfeiture is a consent judgment entered without a hearing pursuant to the terms of the bail bond."]; *People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1047 ["A summary judgment in a bail forfeiture is a consent judgment entered without a hearing and the proceedings are not adversarial."]; *County of Los Angeles v. Amwest Surety Ins. Co.* (1983) 147 Cal.App.3d 961, 967 [an action "to enforce against a bail bond surety the obligation under a bail bond is not . . . an adversary civil action"].) Section 1305 requires the court to declare bail forfeited if the defendant fails to appear for certain proceedings, here, Cardenas's preliminary hearing. Section 1306 directs the court to enter summary judgment against the surety if the forfeiture has not been set aside after the appearance period, which the court also did here (after

14

`

granting Bad Boys Bail Bonds' request to extend the appearance period). The surety has no right to present evidence, and the court entering summary judgment does not need to review or weigh any evidence or make findings. It simply has to confirm from the record of proceedings that the bail had not been set aside. North River does not cite, much less analyze, the factors in *Mathews v. Eldridge, supra*, 424 U.S. 319 to argue why the rule in *European Beverage* should apply to this type of proceeding.

In addition, even in a court trial "different judges may hear different phases of a trial . . . upon the stipulation of the parties." (*European Beverage*, *supra*, 43 Cal.App.4th at p. 1215.) Similarly, where the parties consent to a general reference under Code of Civil Procedure section 635, the trial court appoints a referee to make findings and a ruling and subsequently enters judgment "thereon in the same manner as though the matter had been tried by the court" without reviewing the evidence. (See *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522.) By agreeing to post bail to secure Cardenas's release, North River entered into a contract with the government in which it "consented . . . as prescribed by section[s 1278 and] 1287 that judgment may be summarily entered against it, so long as the provisions of sections 1305 and 1306 have been met." (*County of Los Angeles v. Amwest Surety Ins. Co.*, *supra*, 147 Cal.App.3d at p. 967.) By doing so, North River acknowledged it was not entitled to a trial before a judge or jury before judgment. The trial court did not violate North River's due process rights by entering judgment here. (See *ibid.* ["there is under the Penal Code both notice to the surety and the opportunity to be heard" after the court declares bail forfeited, which is "sufficient to satisfy the California constitutional due process requirements"].)

15

`

D.	*The Trial Court's Alleged Violations of Cardenas's Constitutional Rights Did Not Invalidate the Bond*

Citing *In re Humphrey* (2018) 19 Cal.App.5th 1006 (*Humphrey*), review granted May 23, 2018, S247278, North River in its opening brief argued the bond was void because the trial court violated Cardenas's constitutional rights by setting a bail amount without inquiring into Cardenas's ability to pay the amount or considering less restrictive bail conditions.   In its reply brief, however, North River concedes this issue in light of the court's decision in *People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226 (*North River I*).

We agree with the *North River I* court that, even if a trial court violates a defendant's constitutional rights when setting the bail amount, and even if a surety has standing to assert the defendant's constitutional rights, the bond and a subsequent summary judgment entered are not void.  First, "[a] judgment is 'void' only when the court entering that judgment 'lack[ed] jurisdiction in a fundamental sense' due to the "'entire absence of power to hear or determine the case"' resulting from the "'absence of authority over the subject matter or the parties."'"  (*North River I*, *supra*, 48 Cal.App.5th at p. 233.)  Where a court "merely act[s] in excess of its jurisdiction or defined power," the judgment is voidable but not void.  (*Id.* at pp. 233-234.)  Here, the court did not lack fundamental jurisdiction over the proceedings; the court had subject matter jurisdiction to declare the forfeiture and enter judgment under sections 1305 and 1306 and had personal jurisdiction over North River.  (See *North River I,* at p. 234.)

Second, as the court in *North River I* stated, "any noncompliance with *Humphrey* would, at best, render the bail order voidable *as to the defendant, not as to the surety.*"  (*North*

16

`

*River I*, *supra*, 48 Cal.App.5th at p. 235.)  The bail forfeiture proceedings arose from North River's contract with the government to act as the guarantor of Cardenas's appearance. (See *People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657.)  Therefore, the forfeiture proceedings were "independent from and collateral to" the criminal prosecution, and any "errors in [the] trial court's setting of bail during the criminal prosecution" did not let North River "off the hook in the collateral bail proceedings."  (*Ibid*; see *People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 897-899 [trial court's "[f]ailure to comply with the procedural requirements of *Humphrey* . . . did not render the subsequently issued bond void"]; *People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1217, 1225-1227 [assuming the trial court violated the defendant's constitutional rights by conditioning bail on the defendant waiving his Fourth Amendment rights against warrantless searches, the violation did not "vitiate the surety's obligation to comply with the terms of the undertaking"]; *People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 4, 6-8 [trial court's failure to comply with section 1275 when setting bail did "not operate to exonerate a surety's liability" on the bond].)

`

## DISPOSITION

The order is affirmed.  The People are to recover their costs on appeal.


SEGAL, Acting P. J.


We concur:


FEUER, J.


DILLON, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18