Filed 7/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HANAN SHIHEIBER,<br><br>     Cross-complainant,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>     Cross-defendant and<br>Respondent;<br><br>DENNISE S. HENDERSON et al.,<br><br>     Objectors and Appellants. | A160188<br><br>(San Mateo County<br>Super. Ct. No. CIV493254) |

Attorney Dennise S. Henderson violated several local court rules governing the timely service and filing of materials preparatory to trial (e.g., motions in limine and trial exhibits). As a result, the trial court sanctioned her in the amount of $950 under Code of Civil Procedure section 575.2,[1] the statute authorizing superior courts to provide by local rule for sanctions to enforce their local court rules. The trial court could have imposed a higher amount and was generous in awarding only an amount below that required to be reported by the State Bar.

Nonetheless, Henderson now appeals and challenges the legal basis for the sanctions on two grounds. She contends a superior court's power to impose sanctions for violations of its local rules does not extend to violations of local rules regulating the conduct of trial. She also contends that she could

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

not be sanctioned for violating local court rules because the trial court exonerated her of acting in bad faith.

We reject both of these arguments because the statute by its terms is not limited to pre-trial proceedings and the Legislature did not incorporate, expressly or otherwise, the section 128.5 bad faith standard into section 575.2.

## BACKGROUND

Henderson was lead trial counsel for the borrower in a foreclosure dispute with respondent JPMorgan Chase Bank, N.A. (Chase) that went to trial in San Mateo County Superior Court. The case was on remand for re-trial after we previously reversed the grant of a nonsuit after opening statements in the first trial. (See *Shiheiber v. JPMorgan Chase Bank, N.A.* (Aug. 28, 2018, A147310 [nonpub. opn.].)

In the midst of the re-trial, Chase filed a wide-ranging motion asking for $25,000 in sanctions against the borrower's attorneys for a variety of conduct Chase contended had caused the re-trial to drag on far longer than necessary, all because the borrower's attorneys were ill-prepared for trial. The motion argued, among other things, that opposing counsel had violated numerous local rules and court orders imposing deadlines to submit various trial-related documents (specifically, the parties' motions in limine, jury instructions, witness lists, trial briefs and trial exhibits), and it sought relief under section 128.5, section 575.2 and San Mateo County Local Court Rules, rule 0.2.[2] The $25,000 figure was based on Chase's estimate that, 10 days

---

[2] As described in one of the papers filed below, local rule 0.2 then in effect stated in relevant part: "Failure to comply with any provisions of the Code of Civil Procedure, the California Rules of Court or any of these local rules may result in any or all of the following sanctions, on motion of a party or on the court's own motion: [¶] . . . (c) Order for payment of reasonable

2

into the re-trial, opposing counsel's untimely filings and other conduct had caused its own attorneys to waste about three days of trial time. Chase then expanded its claims in the reply brief it filed months later (after the jury had returned its verdict and the bench portion of trial had been aborted), ultimately seeking $37,587.50 in sanctions for a variety of conduct by opposing counsel, including during the trial.

The trial court issued much more limited relief, on much more narrow grounds. At the hearing on the sanctions motion, the trial court expressed disdain for sanctions motions such as the one filed by Chase, which it said "are not helpful to our judicial system" because they devolve into "collateral matters that take away from the issues from the jury, and more important[ly], the relationship that should [exist] between Counsel," who should be able to "work things out" and "fight[] vigorously but professionally."

The trial court found Henderson had not acted in bad faith and thus declined to sanction her under section 128.5.

Nonetheless, the trial court ruled that sanctions were appropriate for several violations of its local rules of court. Specifically, the trial court made factual findings—which are not contested on appeal—that Henderson: (1) did not timely serve her motions in limine on Chase's counsel, which was required to be done five days before trial under local rule 2.21[3]; (2) did not

costs and expenses including attorney fees, to the opposing party; [¶] (d) Other sanctions authorized by [Code of Civil Procedure,] [s]ection 575.2, [Government Code, section] 68608 [subdivision] (b), [California Rules of Court, rule] 2.30, infra or other law."

[3] The relevant local rules in effect at the time of the trial do not appear to be in the appellate record.

timely file her motions in limine, which was required under local rule 2.20 to be done upon assignment of the case to a trial department[4] (which in this case was July 15, 2019); (3) did not timely file *oppositions* to Chase's motions in limine, which also were required to be filed at the same time—i.e., when the case was assigned to a trial department (see footnote 4, *ante*); and (4) failed to provide sufficient copies of her trial exhibits to the court and opposing counsel by the time the case was assigned to a trial department, which violated local rule 2.22, and caused considerable problems and delay.[5]

Henderson took full responsibility for the situation, and so the court declined to impose sanctions against the other two lawyers representing the borrower and imposed sanctions against Henderson and her law firm alone.[6] The court stated it had "thought quite a bit about the amount of sanctions to

---

Respondent's brief asserts without contradiction that San Mateo County local rule 2.21 "requires parties to *serve in limine* motions upon opposing counsel not less than five (5) calendar days before trial."

[4] Again, respondent's brief asserts without contradiction that "Under Local Rule 2.20, each party is required to <u>file</u> any motions *in limine* and responses thereto, a trial brief, a statement of the case, and a witness list upon assignment to a trial department."

[5] Again, respondent's brief asserts without contradiction that San Mateo County local rule 2.22 states that "[a]ny party intending to offer any exhibit at the time of trial shall be prepared, by the time of assignment to a trial department, with an original and sufficient copies of each such exhibit for all other parties and the court."

[6] The motion cited other local rule violations, including the failure timely to file a trial brief, proposed statement of the case, witness list and jury instructions. The record also suggests Henderson had made a habit of tardiness in her appearances at trial. The trial court did not make express findings regarding these matters or award sanctions based on them; hence, we do not discuss them further, other than to point out that the trial court's patience and forbearance were commendable.

be awarded," and declined to impose sanctions in an amount that would require a referral to the State Bar ($1,000). Instead, it ordered Henderson to pay $950 in sanctions to Chase within 30 days.

After the court issued its ruling from the bench, Henderson asked to be heard one final time. In the ensuing colloquy, Henderson became very heated and "rud[e]" toward the court, which exercised commendable restraint. She repeatedly interrupted the court, raised her voice to the point of yelling, and at one point appeared to make a gratuitous insinuation of racial bias. Ultimately, in a fit of pique, she abruptly ended her appearance by telephone before the hearing concluded, essentially hanging up on the trial court.

The court then reiterated its finding that counsel simply had not been prepared for trial and clarified that the $950 in sanctions are "not attorney's fees. They are sanctions for violating the . . . Local Rules, and they're awarded under Code of Civil Procedure [section] 575.2." Its ruling was embodied in a subsequent written order, and this timely appeal followed.

## DISCUSSION

As noted, Henderson challenges the sanctions order on two legal grounds. One, she contends that sanctions are not authorized under section 575.2 for violating a local rule regulating the conduct of trial. Second, she argues that a superior court's local rule cannot authorize sanctions on a ground broader than is permitted by section 128.5.

### I.

### *The Pre-Trial/Trial Issue*

The Legislature has authorized superior courts to promulgate local rules and to impose sanctions for local rule violations. Specifically, section 575.1 broadly authorizes superior courts to enact local rules "designed to expedite and facilitate the business of the court." (§ 575.1, subd. (a).) The

5

next sentence expressly disclaims any temporal limitation in its coverage: "The rules need not be limited to those actions on the civil active list but *may provide for the supervision and judicial management of actions from the date they are filed.*" (*Ibid.*, italics added.)

In turn, section 575.2 contains an enforcement mechanism. It states in relevant part: "Local rules promulgated pursuant to Section 575.1 may provide that if any counsel, a party represented by counsel, or a party if in pro se, fails to comply with any of the requirements thereof, the court on motion of a party or on its own motion may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, *or impose other penalties of a lesser nature as otherwise provided by law, and may order that party or his or her counsel to pay to the moving party the reasonable expenses in making the motion, including reasonable attorney fees.*" (§ 575.2, subd. (a), italics.) At the same time, section 575.2 precludes an award of sanctions against an innocent client. Section 575.2, subdivision (b) states: "It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto." (See also *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 475 ["Courts have interpreted section 575.2[, subdivision] (b) as 'sharply limit[ing] penalties in instances of *attorney* negligence' "].)

Notwithstanding the breadth of the statutory language, Henderson argues that sanctions imposed under section 575.2 must be limited to violations of local rules governing pre-trial proceedings such as case management conferences and pretrial conferences, not local rules regulating the conduct of trial. Her construction of section 575.2 rests on two points:

6

the fact that the title of the code in which sections 575.1 and 575.2 are located (Title 7a of Part 2 of the Code of Civil Procedure) is labeled "Pretrial Conferences," and on the fact that, in a *different* statute (section 575), the Legislature authorized *the Judicial Council* to "promulgate rules governing pretrial conferences" (see § 575).

We could reject this argument outright because Henderson has not engaged in any meaningful attempt at statutory interpretation. As recently summarized by our Supreme Court, " 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1157.) As the Court of Appeal in *State of California ex rel. Public Works Bd.* (1986) 183 Cal.App.3d 1018 (*Bragg*) observed, " 'Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute *or from its legislative history*." [Citations.]' [Citation.]" (*Bragg, supra*, 183 Cal.App.3d at p. 1025.) Henderson heeds neither of these interpretive principles and we could reject the argument on that basis alone. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived' "]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 9:21, p. 9-6 ["appellate court can treat as waived, forfeited or meritless any issue that, although raised in the briefs, is not supported by

pertinent or cognizable legal argument or proper citation of authority"].) But we will address her argument on its merits because it is also plainly wrong.

Turning first to Henderson's reliance of the code title heading, if Henderson had sought to develop this argument rather than merely assert the point in conclusory fashion, she would quickly have discovered it lacks merit. It has long been the law in California that headings that simply reflect "merely the arrangement, by the editor of the code . . . are no part of the act as adopted by the [L]egislature which a reading thereof will reveal" and that the headings of parts of the code are only treated as part of the law if "such heading is a part of the section at the time of its adoption as the law of the state." (*Kahrs v. Los Angeles County* (1938) 28 Cal.App.2d 46, 49; accord, *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602 ["Title or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute"]; *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1119-1120 [same]).[7]

Nowhere in the statute adopted by the Legislature adding sections 575.1 and 575.2 to the Code of Civil Procedure is there a reference to the heading "Pretrial Conferences" or, indeed, to pretrial conferences at all. (See Stats. 1982, ch. 1402, §§ 1, 2, pp. 5354-5355.) Moreover, the statutory language as originally enacted was as broadly worded as it is currently, referring to "local rules designed to expedite and facilitate the business of the court," as not limited to "actions on the civil active list," and as "provid[ing]

---

[7] Indeed, even the title of a *section* itself is of little weight and may be considered only if the language of the section is ambiguous. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1096, fn. 2 ["Of course, a provision's title 'is never allowed to enlarge or control the language in the body of the [provision]' " (quoting *Hagar v. Superior Court of Yolo County* (1874) 47 Cal. 222, 232)].)

for the supervision and judicial management of actions from the date they are filed" and permitting sanctions for "fail[ing] to comply with *any* of the requirements" imposed by such rules. (*Ibid.*, italics added.) The language of sections 575.1 and 575.2 is not ambiguous, nor does Henderson suggest that it is or point out any ambiguity. In arguing the code heading should control over the unambiguous statutory language, Henderson simply asserts her point in a vacuum with no legal support and ignores California law of statutory construction.

If that were not enough, there is a case specifically rejecting Henderson's argument about the significance of the title heading under which sections 575.1 and 575.2 appear in the code. That is *Bragg, supra,* 183 Cal.App.3d 1018, which was the first appellate decision to construe section 575.2 since its adoption in 1982 and was later cited approvingly by our Supreme Court (see *Garcia v. McCutchen*, *supra*, 16 Cal.4th at p. 475.) Henderson did not cite the case in her opening brief, but Chase appropriately called it to our attention.

*Bragg* reversed a sanction imposed by the trial court, which in that case was a ruling excluding one party's expert evidence at trial for violation of a local rule requiring expert valuation evidence in eminent domain cases to be timely exchanged prior to trial (specifically, "five days before the final pretrial [conference]"). (See *Bragg, supra,* 183 Cal.App.3d at pp. 1021-1022 & fn. 1.) Applying section 575.2, subdivision (b), *Bragg* held the court erred in excluding the government's untimely valuation evidence without first holding a hearing to ascertain whether the client bore any culpability for the rule violation, because the sanction adversely impacted the client. (See *Bragg,* at p. 1030.) The record demonstrated that only the attorney was responsible for

9

the violation, and the court held that, "any penalty should have been imposed on him," not the client. (*Id.* at p. 1028.)

As relevant here, *Bragg* construed section 575.1 as an expansive grant of authority to trial courts in local rule-making. "Through section 575.1," it observed, "the Legislature has enabled each of the 58 superior courts in the state to act as mini-legislatures in the preparation of local rules *governing a wide variety of practice in their courts.*" (*Bragg, supra,* 183 Cal.App.3d at p. 1028, italics added.) It specifically rejected the limitation that Henderson now advances. Consistent with the cases we have already discussed concerning headings in California codes, it explained: "While sections 575.1 and 575.2 are found in the pretrial conference title of the Code of Civil Procedure, *neither their stated purpose nor language limits their use only to pretrial conferences.* The Senate Committee on Judiciary stated the bill would authorize courts to issue orders concerning 'pretrial case management,' but *the language of the statute indicates a broader purpose than mere pretrial conferences as it reads, 'expedite and facilitate the business of the court' and 'provide for the supervision and judicial management of actions from the date they are filed.'* (§ 575.1.)" (*Id.* at p. 1026, fn. 8, italics added.)

Henderson fails to cite or discuss *Bragg* in her opening brief, and in her reply brief, she dismisses *Bragg* as "not so clear" and as having arisen "from an eminent domain case, which has its own set of unique rules." She also claims *Bragg* "did not decide if section 575.2 applied to trial conduct, as the actions of the government attorney occurred before trial." These purported distinctions are untenable.[8] *Bragg*'s statement that the title of the

---

[8] The local eminent domain rule requiring disclosure of expert evidence five days before the final pretrial conference in *Bragg* (*Bragg*, 183 Cal.App.3d at p. 1021, fn. 1) was no more or less trial-related than Henderson's failure to timely serve her motions and oppositions to motions in limine in this case.

Code does not limit trial courts' power to impose sanctions for violations of rules governing *pretrial* proceedings is directly contrary to the position Henderson is taking in this appeal. Yet, even in her reply brief, she ignores the substance of what the court *said* about the argument she advances in this court and does not even argue the *Bragg* court's analysis was incorrect.

This brings us to Henderson's second point—that section 575.2 must be read in context of its surrounding statutes. The principle is accurately stated but Henderson has badly misapplied it. Henderson does not address the only relevant nearby provision—that is, section 575.1. That section is a source of legislative authority for local rule-making and is expressly referenced in section 575.2.

Ignoring section 575.1, Henderson contends instead that section 575.2 must be construed in light of section 575, the statute governing *rules adopted by the Judicial Council*, which is both different in scope than section 575.1 *and* has nothing to do with local rules promulgated by superior courts.[9] On the basis of that statute's mere proximity to section 575.2 in the code and its reference to pretrial conferences, Henderson contends that "Section 575.2,

---

Moreover, the local rule in question there did indeed "regulat[e] the conduct of trials," something that Henderson says is not within the purview of section 575.2; the rule specifically barred parties from "call[ing] any witness to testify on direct examination" concerning a valuation opinion or valuation data unless the information had been timely exchanged. (See *Bragg,* at p. 1021, fn. 1.) As for the opinion's scope, *Bragg* specifically held that the statute applies in this situation. The appellate court could not have been more clear: "[W]e *hold that section 575.2, subdivision (b), is applicable*, and when counsel did not invoke it to protect his client, the trial court should have done so on its own motion." (*Id.* at p. 1023, italics added.)

[9] Specifically, it states: "The Judicial Council may promulgate rules governing pretrial conferences, and the time, manner and nature thereof, in civil cases at issue, or in one or more classes thereof, in the superior courts." (§ 575.)

11

when construed in context, can mean only pretrial conference rules, not rules for trial."

We are decidedly unpersuaded. As stated by the very Supreme Court case that Henderson cites, " '[i]n construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms.' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.) Henderson ignores the fact, most importantly, that section 575.2 *expressly refers to section 575.1*, as well as the fact that neither statute mentions section 575. (See § 575.2, subd. (a) [authorizing superior courts to authorize sanction for violations of "[l]ocal rules promulgated pursuant to section 575.1"].) She also ignores that the language of both sections 575.1 and 575.2 is unambiguously broad in scope and contains no limitation to rules concerning "pretrial conferences." She also ignores the fact that unlike section 575, section 575.1 was part of the same legislation as section 575.2 and that the two sections were adopted together in 1982, some 27 years *after* section 575 had been enacted. (See Stats. 1982, ch. 1402, §§ 1, 2, pp. 5354-5355; Stats. 1955, ch. 632, § 1, pp. 1130-1131.) Given its entirely different language, subject and provenance, section 575 simply has no bearing on the interpretation of section 575.2. And contrary to Henderson's suggestion that there is something in section 575 with which section 575.2 must be "harmonized," she points to no conflict between the two sections, and we can conceive of none.

The obvious (and only) question, then, as to whether the sanctions imposed here under section 575.2 were appropriate, is whether the specific local rules in question here were "promulgated pursuant to Section 575.1." (§ 575.2.) That, in turn, depends on whether they are "designed to expedite

12

and facilitate the business of the court" and/or "provide for the supervision and judicial management of actions from the date they are filed." (§ 575.1, subd. (a).) Henderson has not bothered to address that subject, but the answer is obvious. Local rules like those Henderson violated, requiring submission of trial-related documents by deadlines prior to or at the beginning of trial, obviously "expedite and facilitate the business of the court" by ensuring counsel prepare for trial ahead of time and that counsel and the court can proceed to present the case to the jury without unnecessary delays. Not surprisingly, in this very case, the trial court found that Henderson's failure to comply with the rules resulted in the judge, the court clerk and the parties and counsel having to "spend extra time" and do "extra work" and significantly delayed the trial process.

Finally, we note that, over the course of more than 30 years, section 575.2 has been applied in numerous cases involving sanctions for local rule violations of the sort here involved, with not one appellate court questioning whether its scope is limited to "pre-trial" proceedings however defined (or to actions taken in bad faith, for that matter).[10] While cases are

---

[10] See, e.g., *Amato v. Downs* (2022) 78 Cal.App.5th 435, 442, 446 (error under section 575.2, subdivision (a) to impose sanctions without prior notice and an opportunity to be heard for trial counsel's violation of local rule requiring the filing of jointly prepared trial documents " 'on the first day of trial in the department to which the case has been assigned,' " and reversing and remanding with directions permitting court to "reconsider the issue of whether [counsel] engaged in sanctionable conduct and exercise its discretion to impose an appropriate, alternative sanction (rather than waiver of right to jury trial] if it deems such a sanction is warranted"); *Massie v. AAR Western Skyways, Inc.* (1992) 4 Cal.App.4th 405, 409-412 (where party bore no responsibility for attorney's violation of local rule imposing deadline to deposit jury fees, "the superior court should have . . . imposed any penalty only on [party's] counsel. (§ 575.2, subd. (b))"); *Cooks v. Superior Court of Los Angeles County* (1990) 224 Cal.App.3d 723, 727 (error to sanction client for

not authority for points they have not considered, we simply are not persuaded that the trial court's understanding in this case of the scope of its legal power to sanction a party for local rule violations—an understanding that is evidently shared by many other trial and appellate courts alike—is wrong. (See *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 612 [although " ' " 'cases are not authority for propositions not considered,' " ' " appellate court "must be reluctant to adopt a new rule when it would invalidate the results in multiple prior [appellate] cases"].)

We hold that the trial court had the authority to impose sanctions under section 575.2 for local rule violations, regardless of whether they occurred during pre-trial proceedings or trial proceedings. Not only has Henderson failed utterly to persuade us otherwise, but the authorities Chase cites together with our own research shows there is no merit whatsoever to her argument that section 575.2 is limited to violations of pretrial rules.

## II.

### *The Bad Faith Issue*

This brings us, then, to Henderson's second argument which is also devoid of merit. Section 128.5 states in pertinent part: "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or

---

attorney's violation of local rule concerning deadline to file proposed jury instructions, because "section 575.2, subdivision (b) . . . proscribe[s] any sanction against an innocent party for local rule violations of counsel"); cf. *Estate of Meeker* (1993) 13 Cal.App.4th 1099, 1104 (error to preclude all witnesses from testifying in probate matter where counsel failed to file required joint trial statement on first day of trial setting forth list of witnesses and their proposed testimony because, even if the requirement were embodied in a local rule, the sanction was prohibited by section 572, subdivision (b) because clients were blameless).

tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) Based on highly selective quotations from two inapposite cases (*Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688 (*Sino*); *Trans-Action Commercial Investors, Ltd. v. Jelinek* (1997) 60 Cal.App.4th 352 (*Trans-Action*)), Henderson asserts that a local rule "cannot allow a sanctions award on grounds broader than those . . . in [s]ection 128.5." "Local rules that permit sanctions on broader grounds," she contends, "are invalid." Section 128.5, she argues, "occupies the field," and "precludes any local rule from authorizing sanctions except for the grounds allowed under section 128.5." In other words, she asserts, no sanctions may be imposed for a local rule violation absent a finding of bad faith. And because the trial court concluded Henderson acted in good faith, the sanctions award here was legally erroneous.

The most fundamental problem with this argument is that it ignores section 575.2 itself, the statute that permits courts to adopt local rules and impose sanctions for their violation. Again, in advancing her position Henderson makes *no* attempt at any valid exercise in statutory interpretation. On its face, nothing in the text of section 575.2 indicates a legislative intention to limit sanctions for local rule violations to bad faith conduct. On the contrary, it simply authorizes local rules to provide for sanctions if any lawyer or party "fails to comply with any of the requirements" of "[l]ocal rules promulgated pursuant to Section 575.1." (§ 575.2, subd. (a).) Moreover, the statute's only limitation would implicitly seem to refute a requirement of bad faith. That is, it specifies that sanctions may be imposed only against a party's lawyer "if a failure to comply with these rules is the *responsibility* of counsel and not of the party." (§ 575.2,

15

subd. (b), italics added.) The term "responsibility" would appear to encompass conduct much broader than culpability rising to the level of bad faith.

But Henderson does not engage at all with the statutory text. She has identified no ambiguity in the statutory language that calls for judicial construction, much less has she articulated any cogent reason for us to read into the statutory language a limitation the Legislature did not state expressly.[11] Nor has she identified any conflict between sections 575.2 and 128.5 that would require us to attempt to harmonize them in any way, shape

---

[11] We note that section 575.2 states in relevant part, "the court on motion of a party or on its own motion may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature *as otherwise provided by law*, and may order that party or his or her counsel to pay to the moving party the reasonable expenses in making the motion, including reasonable attorney fees." (§ 575.2, subd. (a), italics added.) Henderson does not argue that the italicized language creates any ambiguity concerning the standard for awarding sanctions under the statute, and we do not perceive any. In context, the "otherwise provided by law" language plainly refers to the type of sanctions that may be awarded, not the basis for imposing them. And even then, the language applies only to the clause of which it is a part ("penalties of a lesser nature") and, as such, merely authorizes lesser penalties that the Legislature has recognized are appropriate sanctions, such as the relatively modest dollar amount imposed in this case. Other statutes reflect that such monetary payments are an appropriate type of sanction. (See, e.g., § 177.5 ["reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500)"]; Fam. Code, § 6322.5, subd. (d) [same]; § 1281.98, subd. (d)]). The "as otherwise provided by law" language cannot reasonably be understood to incorporate another, more specific legal standard for imposing sanctions than the specific ground set forth in section 575.2 or else that section would serve no purpose, since many other sanctions statutes would already provide authorization for imposing sanctions. In particular, this language cannot be read to incorporate the criteria for sanctions set forth in section 128.5, because when the Legislature has intended that result, it has made that explicit.

16

or form. On the contrary, on the face of these two statutes, they appear to address different subjects entirely: section 128.5 confers authority to sanction litigants or their counsel for bad faith or delaying tactics, on the one hand (with the obvious purpose of deterring abusive litigation conduct), and section 575.2 confers authority to impose sanctions for *local rule violations* (with the obvious purpose of ensuring compliance with local trial court rules). As we recently put it, "a cardinal rule of statutory construction[] [is] that it is not a judicial function to read into statutes language the Legislature might have used or might have intended. [Citations.] In other words, courts do not rewrite statutes." (*Podiatric Medical Bd. of California v. Superior Court* (2021) 62 Cal.App.5th 657, 674-675; § 1858.) That seems to be what Henderson is asking us to do.

Beyond that, Henderson ignores altogether the many different sanctions statutes the Legislature has adopted, some requiring a finding of bad faith, and others not. The Legislature has authorized sanctions in a number of statutes, some of which authorize an award of litigation expenses to the opposing party, others monetary sanctions payable to the court, others allowing court rulings adversely affecting the sanctioned party's case and still others a combination of the three. Some of these sanctions statutes require a showing of bad faith or frivolous litigation, like section 128.5. But they do so expressly. (See e.g., § 1038 [prevailing Government Claims Act defendant may recover fees if plaintiff did not act in good faith or lacked reasonable cause for action]; Civ. Code, § 3426.4 [bad faith claim of trade secret misappropriation].) Some statutes, like the anti-SLAPP statute, contain unilateral prevailing party fee shifting provisions in favor of one party only but permit attorney fee awards as sanctions against that party either expressly "pursuant to section 128.5" or pursuant to a standard articulated

17

by the Legislature that is similar to the section 128.5 standard. (§ 425.16, subd. (c)(1) [anti-SLAPP statute, expressly referring to section 128.5]; Gov. Code, § 12965, subd. (c)(6) [employment-related action under Fair Employment and Housing Act, allowing fee award to prevailing defendant only if court finds action was "frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so"]; *id.* § 6259, subd. (d) [action seeking records under Public Records Act, allowing award of prevailing party fees to public agency only if court finds requester's case "clearly frivolous"]; Lab. Code, § 218.5 [action for nonpayment of wages, allowing prevailing party fees to non-employee only if court finds employee "brought the court action in bad faith"].)

By contrast, other sanctions statutes contain standards that are substantively different from the section 128.5 standard. For example, the discovery statutes make sanctions mandatory if a party engages in conduct defined as a "misuse of the discovery process." (§§ 2023.010, 2023.030, subd. (a).) Misuse sanctions are mandatory unless the opposing party proves its actions were "substantially justified" or the court finds " 'other circumstances would make imposition of the sanction unjust.' " (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434-1435; see §2023.030, subd. (a).) These provisions do not require a showing of willfulness, much less bad faith. (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878; *Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1286-1287.)

Similarly, section 177.5 authorizes a court to impose "reasonable monetary sanctions, not to exceed fifteen hundred dollars," payable to the court, against a party who violates a lawful court order "without good cause or substantial justification." (§ 177.5.) This provision was " 'designed to

18

supplement section 128.5' " and, unlike the latter section, "which requires the court to make a subjective determination of the party's intentions, . . . requires only that the sanctioned party violate a lawful court order 'without good cause or substantial justification.' " (*In re Woodham* (2001) 95 Cal.App.4th 438, 446; see also *People v. Aguirre* (2021) 64 Cal.App.5th 652, 668 [section 177.5 does not require a willful violation but merely one committed without a valid excuse].) Similarly, Labor Code section 1128 allows the prevailing party in an action to compel arbitration of a dispute under a collective bargaining agreement to recover fees and costs *unless* the other party "has raised substantial and credible issues involving complex or significant questions of law or fact regarding whether or not the dispute is arbitrable." (Lab. Code, § 1128, subd. (a).) Other examples abound.[12]

The upshot is that the Legislature is adept at articulating the standard required for imposing sanctions in any given situation and has not articulated a uniform, one-size-fits-all standard applicable to all

---

[12] See § 2033.420, subds. (a) & (b) (imposing costs of proof sanctions on party who refuses to admit in response to a request for admission of a fact later proven by the opposing party unless court finds objection to the request was sustained, opposing party waived response, admission sought was unimportant, opposing party had reasonable ground to believe he would prevail or there is other good reason for the failure to admit); § 396b (allowing fee and cost order against non-prevailing party in venue dispute, considering whether offer to stipulate to venue was reasonably made and rejected and whether motion or selection of venue was made in good faith); § 1028.5, subd. (a) (allowing "reasonable litigation expenses in addition to other costs" to be awarded to prevailing small business owner or licensee who has sued state agency if agency action was taken without substantial justification); Rev. & Tax. Code, § 7156, subds. (a) & (c)(2)(a) (in tax collection or refund action, taxpayer may recover reasonable litigation costs allocable to state if taxpayer "substantially prevailed with respect to the most significant issue or set of issues presented" and "state's position was "not substantially justified").

circumstances that could possibly arise in civil litigation.  It has frequently imposed standards significantly different from that prescribed in section 128.5.  Far from "occupying the field," as Henderson argues, section 128.5's requirements are not sub silentio superimposed on all other sanctions statutes.  The wide variation in sanctions statutes shows that when the Legislature intends to require frivolous and bad faith litigation tactics as a prerequisite to sanctions, it says so.  To impose that standard where the Legislature has not prescribed it would ignore the Legislature's obviously contrary intent.

Like many of the statutes we have just described, section 575.2 does not employ terms like "bad faith" or "frivolous" or incorporate section 128.5 by reference.  Instead, the standard it adopts is simply "fail[ure] to comply with any of the requirements" of local rules adopted pursuant to section 575.1 (§ 575.2, subd. (a)), i.e., "local rules designed to expedite and facilitate the business of the court."  (§ 575.1, subd. (a).)  This does not, of course, mean that a superior court may impose any of the sanctions authorized by section 575.2 (striking all or part of a pleading, dismissing all or part of an action, entering a default judgment, penalties of a lesser nature, and awarding the opposing party reasonable expenses incurred in moving for sanctions) for any violation.  Indeed, section 575.2, subdivision (b) makes plain that striking, dismissing and default judgment sanctions, can only be awarded if the party, not only the attorney, is at fault. (§ 575.1, subd. (b).) Further, the range of possible sanctions these sections authorize, and the requirement that issue sanctions be reserved to situations where the party is itself responsible, imply that courts are expected to exercise their discretion to impose sanctions commensurate with the violation at issue.  But nothing in sections 575.1 or 575.2 suggest the Legislature intended that an attorney

20

may not be sanctioned for violating local rules without a showing of bad faith intent.

We could end our analysis there. But we must go a little bit farther in order to address the basis for Henderson's theory that section 128.5 limits a trial court's power to impose sanctions for local rule violations. Rather than provide any cogent analysis of the pertinent statute (i.e., section 575.2), Henderson has cited two cases in support of her novel theory that have nothing to with the issue at hand, which she badly misreads. (See *Sino, supra,* 211 Cal.App.4th 688; *Trans-Action, supra,* 60 Cal.App.4th 352.) Neither case concerns the assertion, in effect, of a conflict between *two statutes* (here, sections 128.5 and 575.2). Neither concerns the validity of local rules enacted pursuant to section 575.1 or the scope of a trial court's sanctioning powers under section 575.2. And neither holds that section 128.5 "occupies the field" in the area of sanctions. Rather, both cases solely address a trial court's power to award attorney fees as sanctions under the rules of court. Here, of course, the trial court did not award attorney fees, and we are not concerned with sanctions imposed under the rules of court.

Specifically, *Trans-Action* invalidated former rule of court 227, which authorized an award of " 'the opposing party's reasonable expenses and counsel fees' " as a sanction for any violation of " 'these rules, local rules or order of the court,' " on the ground that it lacked any statutory authority. (*Trans-Action, supra,* 60 Cal.App.4th at p. 361.) At issue there was an award of $50,000 in attorney fees to a party assessed against the opposing party's lawyer as a sanction for causing a mistrial. (See *id.* at pp. 354, 359-361.) Division Three of this court held the rule was invalid "to the extent it fails to conform with the statutory conditions for an award of attorney's fees as sanctions," and reversed the sanctions order on the ground it "does not meet

21

the conditions of *any* statute." (*Id.* at pp. 354-355, italics added.) Applying the settled principles that "a rule of court must not conflict with statutory intent" and that "[a] rule of court may go beyond the provisions of a related statute so long as it reasonably furthers the statutory purpose" (*id.* at p. 364), the appellate court examined a number of statutes under which counsel's conduct was potentially sanctionable, in order to determine "whether [the] sanction under rule 227 is consistent with the Legislature's intent *regarding fee awards as penalties for disobedience of a court order*." (*Id.* at p. 365, italics added.) Section 128.5 was indeed among them, but so too were many other sanctions statutes the court canvassed to arrive at its conclusion that there was *no* statutory authority for the award of attorney fees as a sanction in that case. (See *Trans-Action,* at pp. 366-372.) *Trans-Action* concluded that "rule 227 conflicts with the legislative intent manifested in the sanctions statutes, to the extent the rule purports to allow sanctions *inconsistent with the limits and conditions provided in an applicable statute*." (*Id.* at p. 372, italics added.) As we have pointed out, unlike in *Trans-Action*, there *is* statutory authority for the local rule pursuant to which sanctions were imposed in this case. That, of course, is section 575.2.

Sino concerns rule 2.30 of the California Rules of Court, which is the revised and renumbered version of former rule 2.27 the Judicial Council rewrote in response to *Trans-Action*. (See *Sino, supra,* 211 Cal.App.4th at pp. 696-697.) There, once again, the trial court assessed a sizeable attorney fees award as a sanction for causing a mistrial (this time, imposed against both lawyer and client, for violating the rule of court requiring notice of any applicable bankruptcy stay (see Cal. Rules of Court, rule 3.650 (b)(4))), and the appellate court reversed "only insofar as  the trial court improperly awarded attorney fees as a sanction for violating a rule of court." (See *Sino*,

at pp. 692-693, 701.)  The first and primary issue was simply the scope of rule 2.30.  (See *Sino,* at pp. 693-699.)  Interpreting its plain text, *Sino* held that rule 2.30 "does not authorize full compensation of *all* attorney fees incurred as a result of a rules violation, but only authorizes the court to award reasonable attorney fees incurred in connection with the proceedings in which the aggrieved party seeks sanctions."  (*Sino,* at p. 691, italics added.)  *Sino* also held that rule 2.30 is a proper exercise of Judicial Council rulemaking authority because it is consistent with the sanctions statutes— including both sections 128.5 *and* 575.2.  (See *Sino,* at pp. 699-700 [citing both].)

In short, nothing in either *Trans-Action* or *Sino* even arguably supports the proposition that the trial courts may not impose a monetary sanction (here, $950) for the violation of a local rule on a ground broader than those permitted under section 128.5.  On the contrary, if anything, *Sino* refutes Henderson's position, because it specifically upheld the validity of a rule of court that permits sanctions *without* a showing of bad faith or other conduct proscribed by section 128.5.  (See Cal. Rules of Court, rule 2.30(b) [authorizing imposition of sanctions "for failure without good cause to comply with the applicable rules"].)

For these reasons, we reject Henderson's argument that the trial court erred in awarding sanctions because it did not find bad faith on Henderson's part.  No bad faith was required.

### III.

### *Conclusion*

By way of closing observation, we note that Henderson's brief provided us virtually no assistance in reaching our decision and fails to meet basic standards governing appellate briefing.  The brief's arguments are conclusory

23

and undeveloped. It does not analyze the statutes we are asked to interpret, ignores published authority directly at odds with Henderson's legal position, provides no pertinent legal authority, and relies on inaccurate citations to the California Rules of Court, an irrelevant statute and a bad misreading of irrelevant caselaw. Indeed, for this reason we could have affirmed the trial court's ruling without even reaching the merits of this appeal on the ground that Henderson's briefs have fallen far short of meeting her burden of persuading us that the trial court erred.

Perhaps the most troubling failure is Henderson's treatment, or rather lack of treatment, of the *Bragg* case. We remind counsel of a point we made in another case not long ago, specifically, that rule 3.3 of the Rules of Professional Conduct, entitled "Candor Toward the Tribunal," provides in pertinent part as follows: " ' "A lawyer shall not [¶] . . . [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel or knowingly misquote to a tribunal the language of a book, statute, decision or other authority. . . ." ' (Rules Prof. Conduct, rule 3.3.)" (*Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 678.) While not as devastating for Henderson as the case omitted by the lawyer in *Davis* (see *id*. at pp. 672-674), the *Bragg* case is "directly adverse to the position of [Henderson]" and should have been disclosed and addressed in Henderson's opening brief.

For all of the many potentially meritorious cases that come before us on appeal, this case, regrettably, reminds us once again of the futility *and* costs of aggressive but ultimately empty advocacy in the appellate courts. There are presumptively innocent individuals—who could be any one of us—who have been incarcerated for crimes they say they did not commit, because of

24

errors in the conduct of their prosecution. There are parents—who could be any one of us—who have been separated from their children, because of errors in the application of our juvenile dependency laws. There are children—who could be any one of ours—who, often against the backdrop of difficult life circumstances, have made errors of judgment that have brought them to the attention of our juvenile delinquency courts, sometimes resulting in the imposition of terms of rehabilitation that may be unwarranted, excessive or unduly harsh. We could go on. When counsel files an appellate brief in a civil case such as this that is so utterly lacking in content sufficient to persuade us of the claims they raise on appeal—by presenting arguments in conclusory fashion, failing to engage in any meaningful analysis, citing no potentially relevant authorities and failing to address authorities that plainly are relevant—it not only dooms their client's appeal. It also clogs our appellate docket and inhibits our ability to timely review and decide other cases, including those involving interests of the utmost personal urgency and importance.

We express no opinion as to whether appellate sanctions are warranted here. Chase has not filed a motion asking for sanctions in the appeal or otherwise complied with rule 8.276, subdivision (b) of the Rules of Court,[13]

---

[13] Chase's respondent's brief contains a single sentence suggesting this court should award it attorney fees as sanctions if we conclude the appeal is frivolous or was filed for the purpose of delay. However, it does not argue the point. "Sanctions cannot be sought in the respondent's brief." (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919. Moreover, we would be subject to justifiable criticism if we awarded attorney fee sanctions to Chase without its having followed the rule for seeking them when we have affirmed the award of sanctions the trial court imposed on opposing counsel for failing to follow the local rules and chastised that counsel for its inadequate briefing on appeal.

and we deem it prudent not to devote any further judicial resources to this appeal in order to consider the question ourselves. (See Cal. Rules of Court, rule 8.276(c)–(e) [procedures governing imposition of appellate sanctions on court's own motion].) We publish this opinion to make clear that, in the future, an appellate argument such as this that is so lacking in even potentially persuasive value will indeed carry the possibility of sanctions as a frivolous appeal. (See, e.g., *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 19 [imposing sanctions because "we conclude that 'any reasonable attorney would agree that the appeal is totally and completely without merit' and would not have raised the arguments defendants make on appeal"].)

## DISPOSITION

The sanctions order is affirmed. Respondent shall recover its costs.

_____
STEWART, J.

We concur.


_____
RICHMAN, Acting P.J.


_____
MAYFIELD, J.*


_____

*JPMorgan Chase Bank, N.A. v. Henderson* (A160188)

* Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27

Trial Court:San Mateo County Superior Court

Trial Judge:          Hon. Nancy L. Fineman

Counsel:

Law Office of Richard L. Antognini, Richard L. Antognini, for Objectors and Appellants.

Lubin Olson & Niewiadomski, Mia S. Blackler, Laura L. Gildengorin, for Cross-defendant and Respondent.